** Summary **
UNEMPLOYMENT BENEFITS — PREGNANT WOMEN Section 40 O.S. 215 [40-215](g) of Title 40 of the Oklahoma Statutes is based exclusively on a physical condition unique to one sex, female, and is prohibited by Title VII of the Civil Rights Act of 1964 and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. The Attorney General has received your request for an opinion wherein you, in effect, ask: "Is 40 O.S. 215 [40-215](g) (1971), pertaining to the disqualification of unemployment benefits to women 6 weeks before and 6 weeks after giving birth to a child, constitutional?" Title 40 O.S. 215 [40-215] (1971) specifically states that: "An individual shall be disqualified for benefits: . . . "(g) For the six (6) weeks before the expected date of the birth of a child to such individual and continuing for six (6) weeks after the date of the actual birth of said child." Sections 40 O.S. 211 [40-211] through 40 O.S. 238 [40-238] of Title 40 of the Oklahoma Statutes are concerned with Employment Security under Oklahoma law and are known as the Oklahoma Employment Security Act. The commentary entitled "Oklahoma Employment Security" by A. K. Little published on page 301 of Title 40, Oklahoma Statutes Annotated, in conjunction with the various sections of the Act itself, clearly point out that the Act was adopted as a correlative act complying with the requirements of the Federal Social Security Board. It is further apparent that the Oklahoma Act must be construed and administered in accordance with the policy and purposes of the federal program and federal regulations under the Social Security Act (42 U.S.C.A. 501, et seq.) In Crow, et al. v. California Department of Human Resources, et al., 325 F. Supp. 1314 (N.D. Cal., 1970), the Court said in part: "Unemployment insurance, like public assistance, is administered by the individual states within a federal statutory framework. Both programs involve grants made to the states which have established programs of aid to unemployed and/or needy persons, which programs have been certified by relevant officials as meeting the standards set by federal statutes and regulations." at 1317 See also Smith v. District Unemployment Compensation Board, 435 F.2d 433 (D.C. Cir. 1970). It is clear, therefore, that the Oklahoma Legislature is not unrestrained in the regulations it can impose upon the program, since the program must ultimately conform to federal standards. In Nash v. Florida Industrial Commission, 389 U.S. 235, 88 S.Ct. 362,19 L.Ed.2d 438 (1967), Mr. Justice Black, speaking for a unanimous Supreme Court, said in part: "It appears obvious to us that this financial burden which Florida imposes will impede resort to the Act and thwart congressional reliance on individual action. A national system for the implementation of this country's labor policies is not so dependent on state law. Florida should not be permitted to defeat or handicap a valid national objective by threatening to withdraw state benefits from persons simply because they cooperate with the Government's constitutional plan. . . . "In M'Culloch v. Maryland, 4 Wheat 316, 436, 4 L.Ed. 579, 609, decided in 1819, this court declared the states devoid of power 'to retard, impede, burden, or in any manner control, the operations of the constitutional laws enacted by Congress to carry into execution the powers vested in the general government. . . ." (at 239 and 240; emphasis added) The section involved denies benefits to a pregnant female for a 12 week period. Such exceptions to eligibility would generally be valid, provided they did not conflict with the congressional purpose in enacting the program, other federal law, or the Constitution. Title VII of the 1964 Civil Rights Act 42 U.S.C.A. 2000e-2(a) provides in part: "It shall be an unlawful employment practice for an employer (1) to fail or refuse to hire or to discharge any individual or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin; or "(2) to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his station as an employee, because of such individual's race, color, religion, sex, or national origin." (Emphasis added) In addition, it is well to note that the United States Congress has passed a proposed constitutional amendment which would prohibit any and all discrimination on the basis of sex, which amendment has currently been ratified by approximately 20 states. It thus becomes clear that the Legislative Branch of the Federal Government has expressed strenuous objection to laws which discriminate against women solely on the basis of sex. The Executive Branch of the Federal Government has also acted. The Equal Employment Opportunity Commission's Guidelines on Discrimination Because of Sex, which were last amended and reissued on March 30, 1972 (37 F.R. 6835), effective on April 5, 1972, are codified as Title 29 C.F.R., Chapter XIV, Part 1604, Sections 1604.1 to 1604.10, as amended. The pertinent sections to the issue at hand read as follows: "Sec. 1604.2. Sex as a Bona Fide Occupational Qualification — "(b) Effect of sex-oriented State employment legislation. (1) Many States have enacted laws or promulgated administrative regulations with respect to the employment of females. Among these laws are those which prohibit or limit the employment of females, e.g., the employment of females in certain occupations, in jobs requiring the lifting or carrying of weights exceeding certain prescribed limits, during certain hours of the night for more than a specified number of hours per day or per week and for certain periods of time before and after childbirth. The Commission has found that such laws and regulations do not take into account the capacities, preferences, and abilities of individual females and therefore discriminate on the basis of sex. The Commission has concluded that such laws and regulations conflict with and are superseded by Title VII of the Civil Rights Act of 1964. Accordingly, such laws will not be considered a defense to an otherwise established unlawful employment practice or as a basis for the application of the bona fide occupational qualification exception." (Emphasis added) "Sec. 1604.10. Employment Policies Relating to Pregnancy and Childbirth. — "(b) Disabilities caused or contributed to by pregnancy, miscarriage, abortion, childbirth, and recovery therefrom are, for all job — related purposes, temporary disabilities and should be treated as such under any health or temporary disability insurance or sick leave plan available in connection with employment. Written and unwritten employment policies and practices involving matters such as the commencement and duration of leave, the availability of extensions, the accrual of seniority and other benefits and privileges, reinstatement, and payment under any health or temporary disability insurance or sick leave plan, formal or informal, shall be applied to disability due to pregnancy or childbirth on the same terms and conditions as they are applied to other temporary disabilities." (Emphasis added) In regard to the interpretative regulations of the Equal Employment Opportunity Commission, such as29 C.F.R. 1604.2(b) and 1604.10(b) quoted above, in Griggs v. Duke Power Company, 401 U.S. 424, 434-435, 91 S.Ct. 849,28 L.Ed.2d 158 (1971), the Supreme Court said: "The administrative interpretation of the act by the enforcing agency the E.E.O.C. is entitled to great deference. See, e.g., U.S. v. City of Chicago, 400 U.S. 8,27 L.Ed.2d 9, 91 S.Ct. 18(1970); Udall v. Tall Man, 380 U.S. 1,13 L.Ed.2d 616, 85 S.Ct. 792 (1965); Power Reactor Company v. Electricians, 367 U.S. 396, 6 L.Ed.2d 924, 81 S.Ct. 1529
(1961)." (p. 165) For another recent case supporting this proposition, see Phillips v. Marietta Corporation,400 U.S. 542, 91 S.Ct. 496, 27 L.Ed.2d 613 (1971). The Judicial Branch of the Government, through the federal courts, has also found that discriminatory employment practices based on sex are invalid. Schattman v. Texas Employment Commission, 330 F. Supp. 328 (W.D.Tex., 1971). Plaintiff was employed by defendant Commission until she was involuntarily terminated pursuant to defendant's policy requiring pregnant employees to terminate their employment no later than two months before the expected delivery date. The Court held that such an employment policy violated Title VII of the Civil Rights Act of 1964 and said in part: "By virtue of female physiology, the defendants' policy applies solely to women. Women are terminated not because of their unwillingness to continue work, their poor performance, or their need for personal medical safety, but because of a condition attendant to their sex. This is the very type of discriminatory regulation condemned by the interpretive regulations of the Equal Employment Opportunity Commission.29 C.F.R. 1604.1(a) provides in part that: " 'The principle of non-discrimination requires that individuals be considered on the basis of individual capacities and not on the basis of any characteristics generally attributed to the group. ' "In view of this provision, Richards v. Griffith Rubber Mills, 300 F. Supp. 338, 340 (D. Ore. 1969), concluded that 'the law no longer permits either employers or the states to deal with women as a class in relation to employment to their disadvantage. ' " (Emphasis added) The Court further noted that employers might have such a policy based upon a particular individual's medical problems, inability to work or upon the safety hazards in a particular job, but "that broad policies not so justified are contrary to law." In another case, Sprogis v. United Airlines, Inc.,444 F.2d 1194 (7th Cir. 1971), the Court said: "The scope of Section 703(a) (1) is not confined to explicit discriminations based 'solely' on sex. In forbidding employers to discriminate against individuals because of their sex, Congress intended to strike at the entire spectrum of disparate treatment of men and women resulting from sex stereotypes. Section 703(a) (1) subjects to scrutiny and eliminates such irrational impediments to job opportunities and employment which have plagued women in the past. The effect of the statute is not to be diluted because discrimination adversely affects only a portion of the protected class. Discrimination is not to be tolerated under the guise of physical properties possessed by one sex (cf. Cheatwood v. South Central Bell Telephone and Telegraph Co., 303 F. Supp. 754, 759-760 (M.D.Ala. 1969)) or through the unequal application of a seemingly neutral company policy. Cf. Phillips v. Martin Marietta Corp.,400 U.S. 542, 91 S.Ct. 496, 27 L.Ed.2d 613. "Viewing the class of United's married employees, it is clear that United has contravened Section 703(a) (1) by applying one standard for men and one for women. Cf. Phillips v. Martin Marietta Corp., supra." (Emphasis added) See also Bartmess v. Drury's U.S.A., Inc., 444 F.2d 1186 (7th Cir. 1971) wherein the Court held that a retirement plan containing different treatment of men and women with respect to retirement ages violates the equal employment opportunity statute, and Doe v. Osteopathic Hospital of Wichita, Inc.,333 F. Supp. 1357 (D.Kan., 1971) wherein a Federal District Court held that a hospital is barred from discharging a female business office employee due to her pregnant, unwed condition because of the 1964 Civil Rights Act's ban on sex discrimination in employment. It can therefore be seen that employment practices which discriminate against women on the basis of characteristics common to their whole group, such as the capacity to bear children, have been condemned by the Courts as violating the 1964 Civil Rights Act's prohibition against sex discrimination in employment practices. All three branches of the federal government have expressed the national policy against employment practices which treat women differently than similarly situated men. For employment purposes at least, pregnancy is similar to any other temporary medical disability. It is a well-settled principle of constitutional law that where a state's statute stands as an obstacle to the realization of the objects of a federal statute, federal law prevails. Florida Lime and Avocado Growers, Inc. v. Paul, 373 U.S. 132, 141, 10 L.Ed.2d 248,83 S.Ct. 1210 (1963); Cloverleaf Butter Co. v. Patterson,315 U.S. 148, 318 U.S. 101, 104, 87 L.Ed. 640,63 S.Ct. 483 (1943); and NLRB v. Hearst Publications, Inc.,322 U.S. 111, 123, 88 L.Ed. 1170, 64 S.Ct. 851 (1944). The section in question, therefore, is of dubious validity for the reasons set out above and in light of the 1964 Civil Rights Act. The final blow to the validity of this statute, however, most certainly comes from a fundamental principle of our laws as old as the Constitution itself — the equal protection of the laws. TheFourteenth Amendment to the United States Constitution provides in Section 1: "No State shall make or enforce any law which shall . . . deny to any person within its jurisdiction the equal protection of the laws. " (Emphasis added) The United States Supreme Court, in Reed v. Reed, 404 U.S. 71,30 L.Ed.2d 225, 92 S.Ct. 251 (1971), recently spoke to the issue of sex discrimination and the Equal Protection Clause. A provision of the Idaho Probate Code gave a mandatory preference for appointment as administrator of a decedent's estate to a male applicant over a female applicant, otherwise equally qualified. If both a male and female sought appointment, though both were equally entitled and qualified, the appointment had to be decided on the basis of sex. In applying the Equal Protection Clause, the Supreme Court said: " . . . this Court has consistently recognized that the Fourteenth Amendment does not deny to States the power to treat different classes of persons in different ways. citations omitted The Equal Protection Clause of that Amendment does, however, deny to States the power to legislate that different treatment be accorded to persons placed by a statute into different classes on the basis of criteria wholly unrelated to the objective of that statute. A classification 'must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike.' Royster Guano Co. v. Virginia, 253 U.S. 412, 415 (1920). " . . . By providing dissimilar treatment for men and women who are thus similarly situated, the challenged section violates the Equal Protection Clause. Royster Guaizo Co. v. Virginia, supra." (30 L.Ed. 229-230) See also Cohen v. Chester Field County School, 326 F. Supp. 1159 (E.D. Va. 1971), wherein the Court held that the school board had violated the Civil Rights Act of 18711 by enforcing a regulation requiring a pregnant teacher to take maternity leave of absence at the end of the fifth month of pregnancy. Since the regulation deprived the pregnant teacher of equal protection in that it treats pregnancy differently from other medical disabilities, the Court said: "The unrefuted medical evidence is that there is no medical reason for the Board's regulation. As a matter of fact, pregnant women are more likely to be incapacitated in the early stages of pregnancy than the last four months. Further, there is no psychological reason for a pregnant teacher to be forced to take a mandatory leave of absence. In short, since no two pregnancies are alike, decisions of when a pregnant teacher should discontinue working are matters best left up to the woman and her doctor. 1 42 U.S.C.A. 1983
"In addition, no tenable administrative reason has been advanced by, the defendants in defense of the provision. . . . Basically, the four month requirement set forth in the provision was arbitrarily selected. " . . . "The maternity policy of the School Board denies pregnant women such as Mrs. Cohen equal protection of the laws because it treats pregnancy differently than other medical disabilities. Because pregnancy, though unique to women, is like other medical conditions, the failure to treat it as such amounts to discrimination which is without rational basis, and therefore is violative of the equal protection clause of the Fourteenth Amendment. citations omitted" Accord, see Williams v. San Francisco Unified School District, 340 F. Supp. 438 (N.D.Cal., 1972). A provision in a state's unemployment compensation law subjecting pregnant and post-pregnant women to more stringent eligibility requirements than are applied to other temporarily disabled persons seems patently discriminatory, and thus prohibited by the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States. Such a statute discriminates between otherwise similarly situated classes on the basis of a physical condition unique to one sex. If that discrimination cannot be reasonably justified, then it is contrary to the law and public policy of the land. It is equally clear that a statute which discriminates on the basis of pregnancy is discriminating on the basis of sex. This principle was recognized by the Court in Sprogis v. United Airlines, Inc., supra, when it said: "Discrimination is not to be tolerated under the guise of physical properties possessed by one sex." The criteria normally applied (availability for work) is clearly more than adequate for the termination of benefits for all persons under the program about to undergo a temporary disability, whether it be pregnancy or otherwise." It is, therefore, the opinion of the Attorney General that your question be answered in the negative. Section 40 O.S. 215 [40-215](g) of Title 40 of the Oklahoma Statutes is based exclusively on a physical condition unique to one sex, female, and is prohibited by Title VII of the Civil Rights Act of 1964 and the Equal Protection Clause of theFourteenth Amendment to the United States Constitution. (James R. Barnett)