**Mrs. Linda NEWMON**
v.
**DELTA AIR LINES, INC.**
**Civ. A. No. 15681.**

United States District Court,
N. D. Georgia,
Atlanta Division.
Dec. 31, 1973.

Elizabeth R. Rindskopf, Atlanta, Ga., for plaintiff.

Michael C. Murphy, Atlanta, Ga., for defendant.

## ORDER

HENDERSON, District Judge.

This is a class action brought pursuant to Title VII of the Civil Rights Act of 1964 (hereinafter referred to as the "Act") 42 U.S.C. § 2000e et seq., for injunctive relief, back wages and restoration of benefits because of alleged sex discrimination by the defendant, Delta Air Lines (hereinafter referred to as "Delta") in the effectuation and operation of its maternity leave policy.

The plaintiff was employed by Delta for almost ten years, from December 1, 1960 to June 15, 1970. During this time she held clerical assignments in the reservations department including that of "Quick Reference Clerk" for five years, reservationist for two years and finally, "Information Clerk", a position she retained until she began her maternity leave. Under Delta's maternity leave policy for ground employees, the plaintiff was required to go on unpaid maternity leave at the end of the fifth month of pregnancy. Upon leaving she

received accrued vacation pay but, in accordance with the airline's policy, was not entitled to accrued sick pay, additional seniority or group insurance except that portion covering child birth expenses.

Six weeks after the birth of her child, and with her physician's approval, she notified her supervisor of her desire to return to work but was informed that no position was available which was suitable to her qualifications. She was further advised that her successor, who was to start maternity leave November 14, 1970, would not be replaced because of economic difficulties Delta was experiencing at that time. After eight months of contacting Delta by telephone and in person, the plaintiff filed, on May 31, 1971, a charge of sex discrimination against Delta with the Equal Employment Opportunity Commission (hereinafter referred to as "EEOC".) On August 15, 1971, she amended the charge for purposes of verification. She received her 30-day "right to sue" letter from EEOC on September 7, 1971 and filed this action shortly thereafter.

The plaintiff's motion for preliminary injunction, reinstatement and back pay was heard and denied by the court on May 31, 1972. On appeal, the United States Court of Appeals for the Fifth Circuit affirmed and remanded the case for trial. Newmon v. Delta Air Lines, Inc., 475 F.2d 768 (5th Cir. 1973).

At the hearing on the preliminary injunction, the plaintiff learned that her reinstatement rights would not be affected by taking other employment. She thereafter sought work with other Atlanta-based airlines but was unsuccessful because of the general "slow down" in the industry. Further efforts to find a job with other businesses nearer her home proved fruitless except for one offer which she rejected for reasons of personal convenience. Finally, on May 14, 1973, she was offered reinstatement by Delta to a shift assignment in the reservation department, the position she now holds.

Delta's maternity leave policy was developed through four distinct periods of time. Prior to 1958 all Delta female ground employees who became pregnant were required to resign their jobs at a date agreed upon by the employee and her supervisor. Because of problems inherent in such a system, the policy was changed in 1958 to provide for termination at the end of the fifth month of pregnancy. Once on leave, the employee accrued no seniority and received only vacation pay then due. Reinstatement was dependent upon there being an opening suitable to her qualifications. In 1968, the policy was again modified to permit a return to work on a preferred basis within 90 days after the birth of the child with no loss of seniority if positions were available. This was the maternity leave policy which governed the plaintiff's employment status. Prior to 1970 stewardesses were required to resign as soon as they learned of their pregnancy, but in 1970, this plan for stewardesses was revised to correspond more favorably to the 1968 ground personnel position. The stewardesses, however, were still required to leave their jobs immediately upon learning of their pregnancy. During leave, the stewardesses accrued three months seniority. The last maternity leave policy revision became effective in November, 1972 and allows female ground employees to work through the eighth month of pregnancy and to continue accruing seniority during the pregnancy absence.

The issues raised in this case as set forth in the pre-trial order are as follows:

(1) Whether the defendant's maternity leave policy constitutes sex discrimination under Section 703 of the Civil Rights Act of 1964 in the following respects:

(a) By requiring all ground employees to take leave automatically by the end of the specified month of pregnancy without regard to the abilities of

individual women to continue working into the later stages of pregnancy;

(b) By denying pregnant employees the use of sick leave or any other employment benefits normally available to those on sick leave, i. e., accrual of seniority and the use of medical insurance benefits;

(c) By permanently replacing pregnant women but giving them priority for future openings in similar positions and preserving their benefits which are based on length of service;

(2) Whether all physical conditions which temporarily disable employees from working should be treated by employers in exactly the same manner;

(3) Whether the EEOC's guidelines of 1972 pertaining to maternity leave are entitled to great deference in this case.

Before giving consideration to the merits of the case there remain three motions filed immediately prior to the trial which must be decided: (1) The plaintiff's motion for certification of the class, (2) the motion of Mrs. Dian T. Thompson, a Delta stewardess, to intervene, and (3) the plaintiff's motion to sever pursuant to Rule 42, Fed.R.Civ.P.

The plaintiff defines the class she seeks to represent as "all female employees of defendant Delta . . . based at any Atlanta facility, whose employment with the defendant and employment related benefits were broken by furlough, discharge or forced resignation occasioned by reason of pregnancy from May 13, 1969 until present." It is alleged that the company's maternity leave policy applies to all women employees automatically and without exception.[1] The plaintiff contends that Rule 23(a)(2), Fed.R.Civ.P. is satisfied

since her claims are typical of those of the class and therefore common questions of law and fact are involved. Additionally, she argues that the purported class satisfies the Rule's numerosity requirement [2] and she will fairly and adequately represent the class since her counsel is experienced and competent in class litigation.[3] Finally, she asserts that the proposed class is manageable yet large enough to be treated as such.

The defendant replies that (1) the mandate of Rule 23(a)(4), Fed.R.Civ.P. is not satisfied because the plaintiff cannot fairly protect the interests of the class, (2) the plaintiff is without standing to attack Delta's denial of sick leave benefits, (3) the plaintiff did not file a timely charge on the denial of sick pay, (4) there are not questions of law and fact common to the entire class membership as proposed and (5) proper notice has not been given to the class pursuant to Rule 23(c)(2), Fed.R.Civ.P.

To be maintainable as a class action, a suit generally must meet all the requirements set forth in Section 23(a) and also fall within one of the subsections of 23(b) of the Federal Rules of Civil Procedure. Eisen v. Carlisle & Jacquelin, 391 F.2d 555, 561 (2nd Cir. 1968). First, the plaintiff must establish the following requirements of Rule 23(a):

(1) The class is so numerous that joinder of all members is impracticable.

(2) there are questions of law or fact common to the class.

(3) the claims . . . of the representative parties are typical of the claims . . . of the class.

(4) the representative parties will fairly and adequately protect the interests of the class.

---

1. As previously indicated the Delta maternity policy as it relates to stewardesses varies from its application to ground employees in that forced maternity leave begins at an earlier date. The plaintiff notes that due to "the unusual demands of that position" no attack is made on the timing of this rule. (Plaintiff's brief in support of the motion, p. 4, fn. 4.)

2. There appears to be some confusion with respect to the exact number of members in the purported class. In the motion for determination of the class the plaintiff alleges there are 193 members. However, in the pre-trial order 198 women are in the class.

3. Johnson v. Ga. Highway Express, Inc., 417 F.2d 1122 (5th Cir. 1969).

**242**

Second, 23(b)(3) requires that, additionally:

the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in a particular forum; (D) the difficulties likely to be encountered in the management of a class action.

■ There are two prerequisites to the institution of a Title VII class action: (1) Rule 23 Fed.R.Civ.P. must be satisfied and (2) the issues raised must be those the plaintiff has standing to raise and in fact did raise before the EEOC. Oatis v. Crown Zellerbach Corp., 398 F.2d 496 (5th Cir. 1968). See also Smith v. North American Rockwell Corp., 50 F.R.D. 515, 524 (N.D. Okl.1970). The requirement of "exhaustion" before the EEOC, and thus standing to file a civil action, is not interpreted to mean that all the niceties of legal pleadings must be fulfilled. Usually, persons filing EEOC complaints are not schooled in legal technicalities and some flexibility must be allowed. The standard for EEOC exhaustion is ably described in King v. Georgia Power Co., 295 F.Supp. 943, 947 (N.D.Ga.1968):

The correct rule is that the complaint in the civil action is confined to those issues the original complaint has standing to raise, but may properly encompass any such discrimination like or reasonably related to the allegations of the charge and growing out of such allegations during the pen-

dency of the case before the Commission. [footnote omitted]

This rule, broadly speaking, in effect limits the civil action to that range of issues that would have been the subject matter of the conciliation efforts between EEOC and the employer. If the civil action were not so limited, then the primary emphasis of this Title would be circumvented, i. e., an emphasis upon voluntary settlement of all issues without an action in the District Court. . . . It should be emphasized that the EEOC is not free to manipulate the scope of a case beyond the bounds herein expressed. The expansion of a particular charge is limited to the issues that a particular complainant has standing to raise.

. . .

■ Applying this rule to the present case, the plaintiff has sufficiently submitted her claims to the EEOC. The issues presented here are those plaintiff has standing to raise and "encompass any such discrimination like or reasonably related to the allegations of the charge and growing out of such allegations during the pendency of the case before the Commission." (emphasis added). King v. Georgia Power Co., supra, at 947; Danner v. Phillips Petroleum Co., 447 F.2d 159, 162, reh. en banc den., 450 F.2d 881 (5th Cir. 1971). Accordingly, the second requirement of Oatis for a Title VII class action is met.

■ It further appears that the requisites of Rule 23, Fed.R.Civ.P. as hereinbefore delineated are generally fulfilled. The fact that almost 200 female employees have been affected by the alleged discriminatory acts of Delta is sufficient to justify class treatment of this case. See generally 3B Moore's Federal Practice, ¶ 23.05, pp. 23–271 et seq.

■ However, plaintiff's construction of the class presents a different problem. It is elementary that questions of law and fact common to the class must

exist.[4] The persons presumably constituting this class may be categorized into two distinctive groups: (1) flying personnel and (2) ground employees. The plaintiff and the majority of those she seeks to represent are ground personnel. While the challenge to the Delta maternity leave policy involves some common issues of law affecting all female employees, it is clear that there are important factual differences pertaining to stewardesses. In the first place, the terms of the leave policy vary between the two categories of personnel as previously noted. The separate job demands of the two create obvious factual deviations critical to a determination of the issues here. The stewardesses must necessarily work in confined spaces— aircraft cabins, they are required by the nature of their job to stand, stoop and walk continually whereas ground employees generally have opportunities to sit or recline when necessary; medical attention for the stewardesses is not available; and the danger of accident and injury in flight to the mother and/or the child is greater for pregnant flight attendants. These job variances are indicative of the different facts necessary to be developed in order to establish whether the Delta plan is discriminatory. Thus, it is apparent that the plaintiff's class should be limited to ground employees.

Without the inclusion of flying personnel, the claims of the plaintiff would be typical of those of the re-defined class. Rule 23(a)(3). The plaintiff can adequately represent and thereby sufficiently protect the interests of the new class, Rule 23(a)(4).[5] Furthermore, there are co-extensive interests between the plaintiff and the class of ground employees.[6] Therefore, the class must be confined to those female Delta employees classified as ground personnel.

With the flying personnel excluded from the class sought to be represented by the plaintiff the conditions of Rule 23(b)(3) are satisfied. The common questions of law and fact now predominate over any individual issues in the case. The plaintiff's motion to certify the class is granted in part within the limits hereinbefore defined.

From the foregoing discussion it is apparent that the motion of Mrs. Dian T. Thompson to intervene cannot be granted because of the difference in the factual situations and it is therefore denied.

■ In addition, Mrs. Thompson does not have standing to challenge the Delta maternity leave policy. According to the affidavit of John Dodd, the supervisor of the Atlanta-based stewards and stewardesses, the movant resigned on August 31, 1970 because she was to be married. Attached to the affidavit is a file copy of an intercompany memorandum from Mrs. Thompson, nee Tucker, stating that she "wishes to submit [her] resignation for flying for the reason that [she is] getting married." Mrs. Thompson added that because she enjoyed her employment with Delta she hoped to return in another capacity in the future. It is obvious that her termination did not result from the maternity leave policy.

Finally, the plaintiff moves to sever liability and damages under Rule 42, Fed.R.Civ.P. Prior to the trial, the court indicated its concurrence with this motion and stated to counsel that the final hearing would encompass only the liability questions, reserving until a later date the issue of damages and other relief, if necessary. The case proceeded to trial with this understanding. The

---

4. While some courts and authorities question the need of Rule 23(a)(2) due to the addition of Rule 23(b), there is no compelling reason to disregard its presence or lessen its importance. See, e. g., 3B Moore's Federal Practice, ¶ 23.06–1, pp. 33–301–303 and cases cited therein.

5. 3B Moore, supra, ¶ 23.07.

6. 3B Moore, supra, ¶ 23.07 [2], p. 23–371; Eisen v. Carlisle & Jacquelin, supra, at 562, 563.

244

motion is belatedly and formally granted.

■ Section 703(a)(1) of Title VII of the Civil Rights Act of 1964, 42 U.S. C. § 2000e–2(a)(1) prohibits the discharge of any employee or from discrimination with respect to the terms, conditions or privileges of employment on the basis of sex.[7] There exists, however, an exception for cases of sex discrimination in the "bona fide occupational qualification" (hereinafter referred to as the "B.F.O.Q.") test found in Section 703(e) (42 U.S.C. § 2000e–2(e) of the Act.

In the trial, both parties offered the testimony of highly qualified physicians —obstetricians, gynecologists, hematologists and psychiatrists in support of their respective positions. These witnesses, whether called by the plaintiff or the defendant, indicated that the decision as to when a pregnant woman should cease her outside work was an individual one to be made by the physician and the patient. The considerations for such a determination include, among other things, working conditions, the type work performed, the preference of the woman, the accessibility of a hospital, and of course, the possibility of complications to both mother and child. The experts almost entirely agreed that, in most cases, a woman could work until the onset of delivery with proper diet, prenatal care and appropriate working conditions. In fact, in some cases, it was noted that the requirement that pregnant women leave their job could have detrimental effects. One of the defendant's own witnesses, when asked whether a maternity leave policy requiring the woman to leave work after five months was reasonable, commented: "Well, I am not so sure its a reasonable policy. . . ." He listed several factors to be taken into consideration in making such a determination including

those mentioned above.[8] From the evidence, there is no legal or factual foundation with which to support a policy of arbitrarily fixing a time when a pregnant woman must terminate her employment.

Similar cases interpreting Section 703 establish that employer policies based on sex will not be tolerated. Bowe v. Colgate-Palmolive Co., 416 F.2d 711 (7th Cir. 1969); Weeks v. Southern Bell Telephone & Telegraph Co., 408 F.2d 228 (5th Cir. 1969). The defendant has assumed that its pregnant ground employees are unable to work productively beyond a certain period of time. The Supreme Court decision in Phillips v. Martin Marietta Corp., 400 U.S. 542, 91 S.Ct. 496, 27 L.Ed.2d 613 (1971) "is compellingly clear on the point that Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. Section 2000e–2 forbids employment opportunity discrimination on the basis of stereotyped or overly categorized distinctions between the male and female sexes." Vick v. Texas Employment Comm., No. 70H–1164 (S.D.Tex. August 30, 1973). Although pregnancy may involve the entire spectrum of personal and social sensitivities, it cannot be the basis for discrimination in view of *Phillips* and Title VII of the Act.

■ Moreover, there has been no showing that Delta's maternity leave policy is "reasonably necessary to the normal operation" of the airline's business. 42 U.S.C. § 2000e–2(e)(1). See 29 C.F.R. 1604.2 (1973). In Weeks v. Southern Bell Telephone & Telegraph Co., *supra*, the Fifth Circuit Court of Appeals made it clear that the burden of proof is on the employer to demonstrate the justification of the B.F.O.Q. exception to certain jobs.

In order to rely on the bona fide occupational qualification exemption an

7. Section 703(a)(1), 42 U.S.C. § 2000e–2(a)(1) reads as follows:
    It shall be an unlawful employment practice for an employer (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.

8. Transcript at 463 ff.

employer has the burden of proving he had reasonable cause to believe, that is, a factual basis for believing, that all or substantially all women would be unable to perform safely and efficiently the duties of the job involved.

*Id.* at 408 F.2d 235. See also Cheatwood v. South Central Bell Telephone & Telegraph Co., 303 F.Supp. 754 (M.D.Ala. 1969). In the present case the plaintiff challenges not merely a single job classification, but a policy which excludes *all pregnant women* from work after an arbitrary date. Since Delta failed to substantiate that pregnant women are not capable of efficiently working after the fifth month of pregnancy and because of the decisive nature of the enlightened medical testimony, it must be concluded that no B.F.O.Q. exception exists. In sum, Delta's five month maternity policy violates Title VII of the Civil Rights Act of 1964 and is a form of sex discrimination.

The next issue of whether the defendant violated § 703 of the Act in denying its pregnant employees disability pay, sick leave pay, or any other attendant employment benefits such as accrual of seniority and use of company insurance benefits is apparently one of first impression. There is a marked absence of criteria by which the scope of Section 703(e) of the Act may be measured. Comment, 51 N.C.L.R. 768, 781 (1973). As noted above, there are no judicial decisions comparable to this situation although various courts have considered sex discrimination in connection with some "fringe benefit" plans, *e. g.* Rosen v. Public Service Electric & Gas Co., 409 F.2d 775 (3rd Cir. 1972), pension plans; Hays v. Potlatch Forests, Inc., 465 F.2d 1081 (8th Cir. 1972), overtime pay; Bartmess v. Drewrys, 444 F. 2d 1186 (7th Cir. 1971), retirement plans; Mixon v. Southern Bell Telephone & Telegraph Co., 334 F.Supp. 525 (N.D. Ga.1971), retirement plans. Those cases are distinguishable from the present one since they deal with disparate treatment of the sexes.

The only authority directly supporting the plaintiff's assertion that denial of sick and disability benefits to a pregnant woman is sex discrimination are those set forth in the EEOC guidelines which were first issued in 1972 at 29 C. F.R. § 1604.10, almost eight years after the enactment of the Act. The 1973 version of the guidelines at 29 C.F.R. § 1604.10(b) provides that "[d]isabilities caused or contributed to by pregnancy, miscarriage, abortion, childbirth, and recovery therefrom are . . . temporary disabilities and should be treated as such under any . . . insurance or sick leave plans available in connection with employment." While these agency guidelines are normally "entitled to great deference", Griggs v. Duke Power Co., 401 U.S. 424, 434, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971) and cases cited therein, they are not legally binding upon the court. Similarly, EEOC reports and decisions are not adequate legal authority. Smith v. Universal Services, Inc., 454 F.2d 154. (5th Cir. 1972). Not only is there no judicial determination that the regulations, particularly 29 C.F.R. § 1604.10(b), mean pregnancy is a sickness or disability and therefore entitles pregnant women to such benefits as a matter of law as the plaintiff implies, there appears to be no factual basis upon which these regulations were drawn. Furthermore, upon examining the actual wording of the guidelines it is not apparent that they actually equate pregnancy with disability or sickness.

For these reasons the plaintiff's interpretation of the EEOC guidelines is not acceptable. It is more appropriate to determine this issue based upon a common sense interpretation of the facts presented at the trial. Whether the plaintiff and her class are the victims of discrimination because of sex depends on the definition of pregnancy. After careful consideration of the evidence, including the medical testimony, it must be concluded that pregnancy is neither a sickness nor a disability. In the first place, pregnancy is, in most cases, a vol-

untarily imposed condition and the fact of its existence demonstrates that a woman is quite healthy and normal, since sick is defined as "affected with disease; not well or healthy, ill, ailing, indisposed". Webster's Third International Dictionary, Unabridged (1969) at p. 2110. A reasonable approach dictates the holding that pregnancy is not sickness in the usual sense of the word.

■ Finally, the defendant's maternity policy is attacked as discriminatory because it permits those on such leave to be permanently replaced although they are granted priority for future employment and retain their benefits based on length of service. Other cases dealing with Title VII sex discrimination have declared as illegal the refusal to hire mothers, Phillips v. Martin Marietta Corp, supra; or those who may become mothers, Cheatwood v. South Central Bell Telephone & Telegraph Co., supra; or to discharge pregnant employees, Doe v. Osteopathic Hospital of Wichita, 333 F.Supp. 1357 (D.Kan.1971) and cases cited therein. It arguably appears then that a refusal to rehire in an available similar job also would be violative of the Act, unless it can be shown that such refusal was dictated by business necessity, a limited exception to the Act's command against discrimination. Griggs v. Duke Power Co., supra.

The applicability of the "business necessity" doctrine depends upon much more than just convenience. "Necessity connotes an irresistable demand." United States v. Bethlehem Steel Corp., 446 F.2d 652, 662 (2nd Cir. 1971). For such a policy as Delta's to be maintainable, it must promote efficiency of operation and be indispensible toward that end. See United States v. Jacksonville Terminal Co., 451 F.2d 418 (5th Cir. 1971); United States v. Bethlehem Steel Corp., supra; Robinson v. P. Lorilland Corp., 444 F.2d 791 (4th Cir. 1971), cert. den. 404 U.S. 1006, 92 S.Ct. 573, 30 L.Ed.2d 655 (1972). In an earlier case construing the "business necessity" rule, the Fifth Circuit Court of Appeals specifically noted that "[w]hen the defendant's conduct evidences an 'economic purpose' there is no discrimination under Title VII. . . ." Local 189 United Papermakers & Paperworkers v. United States, 416 F.2d 980, 992 (5th Cir. 1969). See also Jones v. Lee Way Motor Freight, Inc., 431 F.2d 245, 249 (10th Cir. 1970).

Delta justifies its failure to rehire the plaintiff on the ground, among others, that it cannot obtain temporary replacements for pregnant employees and that holding such a large number of positions open for women on maternity leave would be demoralizing to the remainder of its work force. The plaintiff points out, however, that, according to James A. York, a Delta vice president, the airline often makes use of temporary employees especially during "peak load" or rush times (Transcript at pp. 585 ff). She further maintains that Delta's own records (Plaintiff's Exhibit 13) reveal a much smaller number of employees on maternity leave, slightly over two percent. While it appears that Delta does employ temporary help at certain times during the year, such short term assistance is not used for periods as long as normally required for those on maternity leave. The feasibility of utilizing temporary replacements in such circumstances was not supported by the evidence.

Of greater importance, however, is the evidence that the plaintiff was not rehired because of a business "slump" at the time which affected Delta and others in the air travel industry. In fact, the plaintiff's old job was later abolished as a result of this adverse economic impact. This reality is substantiated by the failure of the plaintiff to obtain employment with any other Atlanta-based airlines, even though she was experienced in a phase of that business. Therefore, the evidence is uncontradicted that Delta's failure to re-employ the plaintiff was dictated by business prudence rather than sex discrimination.

Inasmuch as this determination necessarily applies only to the plaintiff's individual claim, the rights and demands of each of the members of the class must await adjudication until a subsequent hearing for damages and other relief.

In summary, the policy of the defendant as it existed in 1970 requiring female ground employees to take maternity leave at the end of the fifth month of pregnancy without giving consideration to the individual abilities of such employees to continue working amounts to discrimination based upon sex and is violative of Section 703 of the Civil Rights Act of 1964. The defendant's refusal to re-employ the plaintiff at the conclusion of her maternity leave was due to economic necessity and not to sex discrimination. As stated, another hearing will be scheduled as soon as practicable to consider the remaining issues of damages and injunctive relief affecting the plaintiff and other members of the class.