EQUAL EMPLOYMENT OPPORTUNI-
TY COMMISSION, Plaintiff,

v.

DELTA AIR LINES, INC., Defendant.

Civ. A. No. 76–906.

United States District Court,
N. D. Georgia,
Atlanta Division.

March 11, 1980.

Donald L. Hollowell, Asst. Gen. Counsel, Equal Employment Oppor. Commission, Atlanta, Ga., for plaintiff.

Sidney F. Davis, Law Dept., Seward & Kissel, Atlanta, Ga., for defendant.

## ORDER

ROBERT H. HALL, District Judge.

This is a sex discrimination case brought under Title VII against Delta Air Lines, Inc., seeking monetary and injunctive relief against certain Delta policies concerning flight attendants. The case comes before the court on Defendant's Motion for Summary Judgment, Plaintiff's Motion to Reopen Discovery, and Plaintiff's Motion to Take Judicial Notice.

In 1976 the Equal Employment Opportunity Commission filed this complaint alleging that numerous Delta policies violated Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e–2. Previous rulings of this court have eliminated many issues from the case. There has been an interim appeal in which this court's dismissal of one count of the original complaint was affirmed. *Equal Employment Opportunity Commission v. Delta Airlines, Inc.*, 578 F.2d 115 (1978). In 1978, plaintiff amended the complaint to allege that, with respect to flight attendants, Delta violated Title VII by "instituting, implementing and maintaining a policy which treats maternity leave different from sick leave or other temporary medical leave and otherwise discriminating against females with respect to their terms, conditions and privileges of employment because of their sex . . . .'."

The amended complaint was based on the administrative charges of two Delta flight attendants, Marianne Martino and Diane Adams. At the time these Charging Parties were on maternity leave, Delta did not allow sick pay to be used for pregnancy and related absences from work, though that policy has subsequently been changed.

In previous orders this court has certified a class "of all past, present and future female flight attendants of Delta Air Lines, Inc., who, since September 28, 1973, commenced a mandatory maternity leave of absence."

The two Delta policies as to which discrimination issues remain are the denial of sick pay to flight attendants on maternity leave, (the "sick pay" claim), and the requirement that flight attendants must take immediate unpaid maternity leave upon being notified by their physicians that they are pregnant, (the "stop work" issue.)

In 1977 a stay was ordered pending the United States Supreme Court's resolution of *Nashville Gas Company v. Satty*, 434 U.S. 136, 98 S.Ct. 347, 54 L.Ed.2d 356 (1977) and *Richmond Unified School District v. Berg*, 434 U.S. 158, 98 S.Ct. 623, 54 L.Ed.2d 375 (1977).

*Motion for Summary Judgment—Sick Pay*

The sick pay portion of Delta's Family-Care Program is now before the court. Delta flight attendants accrue sick pay, which for most illnesses may be saved and used later. However, at the time the Charging Parties were on maternity leave, Delta did not allow sick pay to be used for pregnancy-related absences from work. On March 1, 1979, Delta changed its policy and has subsequently allowed sick pay to be used for pregnancy. On April 29, 1979, Title VII was amended and now requires that sick pay apply to leaves of absence on account of pregnancy.

With respect to the sick pay issue, the court finds the following facts:

1. Delta provides its employees with certain fringe benefits, among which are sick pay benefits.
2. Delta employees do not contribute to the costs of the benefits.
3. Delta acts as a self-insurer for its sick pay program.
4. Under Delta's sick pay program prior to March 1, 1979, absences resulting from pregnancies were excluded from coverage for flight attendants.
5. Delta has a maternity leave policy for its flight attendants which requires that they notify Delta as soon as they know they are pregnant, and they immediately lose their flight status. If a ground position is available and if the flight attendant desires to continue working, she may be placed in the ground position. (The "stop work" policy.)
6. Delta's ground employees are not required to stop working immediately upon notification of pregnancy.
7. Approximately five percent of Delta's flight attendants become pregnant each year.
8. Delta is a common air carrier engaged in transportation of passengers in interstate and international commerce.
9. Approximately 90% of Delta's flight attendants are female.
10. Despite the former exclusion from coverage of pregnancy-related absences under Delta's sick pay program, the value of such benefits was greater for a female Delta employee than for a male Delta employee, under actuarial data.
11. Had Delta included coverage for pregnancy-related absences in its sick pay program, the disparity in the value of benefits in favor of female Delta employees would have increased.
12. Delta has employed both males and females in the position of flight attendant since December, 1972.

*Conclusions of Law*

■ The sick pay issue in this case is controlled by *Nashville Gas Company v. Satty, supra.* In *Satty*, the U.S. Supreme Court analysed the sick pay claim under Section 703(a)(1) of Title VII and built upon its own earlier case in *General Electric Company v. Gilbert*, 429 U.S. 125, 97 S.Ct. 401, 50 L.Ed.2d 343 (1976). The court wrote in *Satty* : "As in *Gilbert*, the compensation [sick pay] is not extended to pregnancy-related absences. We emphasized in *Gilbert* that exclusions of this kind are not *per se* violations of Title VII: 'An exclusion of pregnancy from a disability-benefits plan providing general coverage is not a gender-based discrimination at all.' [Citation.] . . . Only if a plaintiff through the presentation of other evidence can demonstrate that exclusion of pregnancy from the compensated conditions is a mere '[pretext] designed to effect an invidious discrimination against members of one sex or the other' does Title VII apply." * * * "When confronted by a facially neutral

plan, whose only fault is underinclusiveness, the burden is on the plaintiff to show that the plan discriminates on the basis of sex in violation of Title VII." *Nashville Gas Company v. Satty, supra*, 98 S.Ct. at 352.

At trial plaintiff would have the burden of proving pretext. However, this is Delta's summary judgment motion and Delta must show that there is no genuine issue as to any material fact while all inferences from the underlying facts are construed in the light most favorable to the plaintiff. Even under this difficult standard, however, the court finds that Delta has carried the burden of showing that its sick pay policy with respect to flight attendants does not violate Title VII.

Plaintiffs do not seriously deny that absent a finding of "pretext" Delta's former sick pay policy was non-discriminatory under the reasoning of *Satty*. In arguing for a finding of pretext, the plaintiff offers the following: "The record in this case is replete with examples of disparate treatment of females by Delta because of their sex. Historically, Delta has terminated flight attendants who have become pregnant, has required pregnant ground employees to begin maternity leave at a specified time, *Newmon v. Delta Air Lines*, 374 F.Supp. 238 (N.D.Ga.1973), and has denied both pregnant ground employees and flight attendants to terminate their position." [Sic]. (Because of a clerical error, the final portion of this argument is unintelligible.)

The court finds that these elliptical allegations are insufficient to raise a genuine issue of pretext. With respect to Delta's historical termination of pregnant flight attendants, the court notes that the period of this policy overlapped with the pre-1972 years during which Delta hired no male flight attendants. Therefore, the termination of pregnant female flight attendants was discrimination against pregnancy but was not and could not be sexual discrimination against women. *McMonigle v. Delta Air Lines, Inc.*, 556 F.2d 1261, 1263 (5th Cir. 1977). *See, Equal Employment Opportunity Commission v. Delta Air Lines, Inc.*, 578 F.2d 115 (5th Cir. 1978) (no sex discrimina-

tion in no-marriage rule when no male flight attendants); *James v. Delta Airlines, Inc.*, 571 F.2d 1376 (5th Cir. 1978) (no sex discrimination in partial loss of seniority for pregnant flight attendants when no male flight attendants); *Stroud v. Delta Air Lines, Inc.*, 544 F.2d 892 (5th Cir. 1977).

Accordingly, the court finds that Delta's historical termination of flight attendants does not indicate that the current sick pay policy under discussion is a pretext.

■ Turning to the second asserted ground of pretext, which is Delta's requirement that pregnant ground employees begin maternity leave at a specified time, the court acknowledges that this policy has been held to constitute sex discrimination. *Newmon v. Delta Air Lines, Inc., supra*. However, as the *Newmon* case noted, flight attendants and ground employees are subject to differing job requirements. Additionally, the *Newmon* case held that denial of sick pay benefits to pregnant employees was not prohibited by Title VII. The existence of the *Newmon* ruling does not require the court to find pretext. Considering that the overwhelming number of Delta's flight attendants are young females and that the period of their employment overlaps with their prime reproductive years, and considering the potential cost of sick pay benefits for pregnancy, the court finds it likely that economics played the deciding role here.

■ As the Supreme Court itself noted in *Satty*, the mere fact that an employer has committed sexual discrimination in one respect does not require the trier of fact to decide that a facially neutral policy is a mere pretext for sex discrimination. 98 S.Ct. at 353. In a similar case, the District Court for the Eastern District of Virginia wrote that "as heretofore indicated, reliance solely on Eastern's general history of discrimination against female flight attendants is insufficient to demonstrate unlawful pretext with respect to a specific policy." *Burwell v. Eastern Air Lines, Inc.*, 458 F.Supp. 474, 492 (E.D.Va.1978).

The court holds as a matter of law that Delta's denial of sick pay benefits for pregnancy does not constitute discrimination on the basis of sex as prohibited by Title VII. . Accord, *Burwell v. Eastern Air Lines, Inc., supra; Newmon v. Delta Air Lines, supra,* at 245–246. Delta's policy in this regard has been specifically upheld in *EEOC v. Delta Air Lines, Inc.,* 441 F.Supp. 626 (S.D. Tex.1977).

Delta's Motion for Summary Judgment on the sick pay issue will be GRANTED.

*Motion. for Summary Judgment—The Stop Work Policy—Forced Maternity Leave*

■ Under Delta's stop work policy, a pregnant flight attendant must take an unpaid leave of absence for the entire remaining period of her pregnancy unless there is a ground position available for which she is qualified. This leave must begin immediately upon the flight attendant's being notified by her physician of her pregnancy, and could easily amount to a period of unemployment totaling seven or more months. In showing these facts, plaintiff has plainly made out a prima facie case of sex discrimination. Accord, *Burwell v. Eastern Air Lines, Inc., supra,* 458 F.Supp. at 495; *In re National Airlines, Inc.,* 434 F.Supp. 249 (S.D.Fla.1977). The burden shifts to Delta to show either a genuine business necessity or a bona fide occupational qualification to justify the policy under § 703(e) of Title VII, 42 U.S.C. § 2000e–2(e). These are extremely narrow exceptions, and their analysis invokes a less-restrictive-alternative rationale. *Dothard v. Rawlinson,* 433 U.S. 321, 333, 97 S.Ct. 2720, 2728, 53 L.Ed.2d 786 (1977). Delta does not clearly invoke either defense, seemingly relying upon the argument that plaintiff has failed to make out a prima facie case.

■ The keystone of Delta's position boils down to an assertion that pregnant flight attendants are *per se* less able than non-pregnant flight attendants to carry out the duties of their job including emergency duties; and that, placing safety factors uppermost, an employer, buttressed by conservative medical opinion, is justified in taking the extremely conservative position of denying flight status to all pregnant flight attendants. Perhaps this is a business necessity rationale. With respect to this entire issue, however, the court finds numerous material questions of fact which remain for trial.

Medical opinion on the ability or disability of pregnant females is not clear, as the affidavits of the parties illustrate. The law as it appears to be developing in recent cases around the country provides no concensus on the validity under Title VII of a stop work policy. Some courts have upheld a stop work policy for pregnant flight attendants. E. g., *Condit v. United Air Lines, Inc.,* 558 F.2d 1176 (4th Cir. 1977) cert. den. 435 U.S. 934, 98 S.Ct. 1510, 55 L.Ed.2d 531; *Harriss v. Pan American World Airways, Inc.,* 437 F.Supp. 413 (N.D.Cal.1977); *EEOC v. Delta Air Lines, Inc.,* 441 F.Supp. 626 (S.D.Tex.1977). Others have found that such a policy violates Title VII. E. g., *Burwell v. Eastern Air Lines, Inc., supra; In re National Airlines, Inc., supra.*

The court cannot conclude that Delta's stop work policy is per se proper. Moreover, Delta has not claimed to have investigated other less restrictive alternatives which might satisfy its safety considerations. Accordingly, the motion for summary judgment with respect to the immediate mandatory maternity leave policy is DENIED.

*Plaintiff's Motion to Reopen Discovery*

In light of the facts that discovery in this case ceased during 1977, and that the above ruling on the maternity leave policy will require a trial, and that pertinent cases were decided in other courts during 1977 and 1978, the court agrees with plaintiff that a renewed period of discovery would be beneficial and hereby orders that discovery may be reopened for 45 days from the entry of this order.

*Plaintiff's Motion to Take Judicial Notice*

■ Pursuant to Federal Rules of Evidence, Rule 201, the court will take judicial

notice as requested that only females become pregnant. With respect to Items 2 and 3 of plaintiff's Motion to Take Judicial Notice, however, the court directs that the parties discuss the possibility of stipulating these items in the pre-trial order. Items 2 and 3 of the motion are hereby DENIED, without prejudice to plaintiff's right to raise them later.

In conclusion, Delta's Motion for Summary Judgment on the sick pay claim is hereby GRANTED; Delta's Motion for Summary Judgment on the stop work policy is DENIED; Plaintiff's Motion to Reopen Discovery is GRANTED for 45 days; Plaintiff's Motion to Take Judicial Notice is GRANTED as to Item 1 and DENIED as to Items 2 and 3.