PHILLIPS *v.* MARTIN MARIETTA CORP.

No. 73. Argued December 9, 1970—Decided January 25, 1971

*William L. Robinson* argued the cause for petitioner. With him on the briefs were *Jack Greenberg, James M. Nabrit III, Norman C. Amaker,* and *Earl M. Johnson.*

*Donald T. Senterfitt* argued the cause for respondent. With him on the brief were *William Y. Akerman, Paul A. Porter, Victor H. Kramer, Dennis G. Lyons, James A. Dobkin, Clark C. Vogel, James T. Ellison, J. Thomas Cardwell,* and *George T. Eidson, Jr.*

*Lawrence G. Wallace* argued the cause for the United States as *amicus curiae* urging reversal. With him on the brief were *Solicitor General Griswold, Assistant Attorney General Leonard, Robert T. Moore,* and *Stanley P. Hebert.*

Briefs of *amici curiae* urging reversal were filed by *Dorothy Kenyon, Norman Dorsen, Pauli Murray,* and *Melvin L. Wulf* for the American Civil Liberties Union; by *Gilbert Feldman* for the Air Line Stewards and Stewardesses Association, Local 550, Transport Workers Union of America, AFL–CIO; by *Jacob D. Hyman, Faith A. Seidenberg, Marguerite Rawalt,* and *Phineas Indritz* for NOW Legal Defense and Education Fund, Inc.; and by *Sylvia Ellison* for Human Rights for Women, Inc.

PER CURIAM.

Petitioner Mrs. Ida Phillips commenced an action in the United States District Court for the Middle District of Florida under Title VII of the Civil Rights Act of 1964* alleging that she had been denied employment because of her sex. The District Court granted summary judgment for Martin Marietta Corp. (Martin) on the basis of the following showing: (1) in 1966 Martin informed Mrs. Phillips that it was not accepting job applications from women with pre-school-age children; (2) as of the time of the motion for summary judgment, Martin employed men with pre-school-age children; (3) at the time Mrs. Phillips applied, 70–75% of the applicants for the position she sought were women; 75–80% of those hired for the position, assembly trainee, were women, hence no question of bias against women as such was presented.

The Court of Appeals for the Fifth Circuit affirmed, 411 F. 2d 1, and denied a rehearing en banc, 416 F. 2d

---

*Section 703 of the Act, 78 Stat. 255, 42 U. S. C. § 2000e–2, provides as follows:

"(a) It shall be an unlawful employment practice for an employer—

"(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin . . . .

"(e) Notwithstanding any other provision of this title, (1) it shall not be an unlawful employment practice for an employer to hire and employ employees . . . on the basis of . . . religion, sex, or national origin in those certain instances where religion, sex, or national origin is a bona fide occupational qualification reasonably necessary to the normal operation of that particular business or enterprise . . . ."

1257 (1969). We granted certiorari. 397 U. S. 960 (1970).

Section 703 (a) of the Civil Rights Act of 1964 requires that persons of like qualifications be given employment opportunities irrespective of their sex. The Court of Appeals therefore erred in reading this section as permitting one hiring policy for women and another for men— each having pre-school-age children. The existence of such conflicting family obligations, if demonstrably more relevant to job performance for a woman than for a man, could arguably be a basis for distinction under § 703 (e) of the Act. But that is a matter of evidence tending to show that the condition in question "is a bona fide occupational qualification reasonably necessary to the normal operation of that particular business or enterprise." The record before us, however, is not adequate for resolution of these important issues. See *Kennedy* v. *Silas Mason Co.,* 334 U. S. 249, 256–257 (1948). Summary judgment was therefore improper and we remand for fuller development of the record and for further consideration.

*Vacated and remanded.*

MR. JUSTICE MARSHALL, concurring.

While I agree that this case must be remanded for a full development of the facts, I cannot agree with the Court's indication that a "bona fide occupational qualification reasonably necessary to the normal operation of" Martin Marietta's business could be established by a showing that some women, even the vast majority, with pre-school-age children have family responsibilities that interfere with job performance and that men do not usually have such responsibilities. Certainly, an employer can require that all of his employees, both men and women, meet minimum performance standards, and

he can try to insure compliance by requiring parents, both mothers and fathers, to provide for the care of their children so that job performance is not interfered with.

But the Court suggests that it would not require such uniform standards. I fear that in this case, where the issue is not squarely before us, the Court has fallen into the trap of assuming that the Act permits ancient canards about the proper role of women to be a basis for discrimination. Congress, however, sought just the opposite result.

By adding [1] the prohibition against job discrimination based on sex to the 1964 Civil Rights Act Congress intended to prevent employers from refusing "to hire an individual based on stereotyped characterizations of the sexes." Equal Employment Opportunity Commission, Guidelines on Discrimination Because of Sex, 29 CFR § 1604.1 (a)(1)(ii). See *Bowe* v. *Colgate-Palmolive Co.*, 416 F. 2d 711 (CA7 1969); *Weeks* v. *Southern Bell Tel. & Tel. Co.*, 408 F. 2d 228 (CA5 1969). Even characterizations of the proper domestic roles of the sexes were not to serve as predicates for restricting employment opportunity.[2] The exception for a "bona fide occupational qualification" was not intended to swallow the rule.

That exception has been construed by the Equal Employment Opportunity Commission, whose regulations are entitled to "great deference," *Udall* v. *Tallman*, 380 U. S. 1, 16 (1965), to be applicable only to job situations

---

[1] The ban on discrimination based on sex was added to the Act by an amendment offered during the debate in the House by Rep. Smith of Virginia. 110 Cong. Rec. 2577.

[2] See *Neal* v. *American Airlines, Inc.*, 1 CCH Employment Practices Guide ¶ 6002 (EEOC 1968); *Colvin* v. *Piedmont Aviation, Inc.*, 1 CCH Employment Practices Guide ¶ 6003 (EEOC 1968); 110 Cong. Rec. 2578 (remarks of Rep. Bass).

that require specific physical characteristics necessarily possessed by only one sex.[3] Thus the exception would apply where necessary "for the purpose of authenticity or

[3] The Commission's regulations provide:

"Sex as a bona fide occupational qualification.

"(a) The Commission believes that the bona fide occupational qualification exception as to sex should be interpreted narrowly. Labels—'Men's jobs' and 'Women's jobs'—tend to deny employment opportunities unnecessarily to one sex or the other.

"(1) The Commission will find that the following situations do not warrant the application of the bona fide occupational qualification exception:

"(i) The refusal to hire a woman because of her sex, based on assumptions of the comparative employment characteristics of women in general. For example, the assumption that the turnover rate among women is higher than among men.

"(ii) The refusal to hire an individual based on stereotyped characterizations of the sexes. Such stereotypes include, for example, that men are less capable of assembling intricate equipment; that women are less capable of aggressive salesmanship. The principle of non-discrimination requires that individuals be considered on the basis of individual capacities and not on the basis of any characteristics generally attributed to the group.

"(iii) The refusal to hire an individual because of the preferences of co-workers, the employer, clients or customers except as covered specifically in subparagraph (2) of this paragraph.

"(iv) The fact that the employer may have to provide separate facilities for a person of the opposite sex will not justify discrimination under the bona fide occupational qualification exception unless the expense would be clearly unreasonable.

"(2) Where it is necessary for the purpose of authenticity or genuineness, the Commission will consider sex to be a bona fide occupational qualification, e.g., an actor or actress.

"(b)(1) Many States have enacted laws or promulgated administrative regulations with respect to the employment of females. Among these laws are those which prohibit or limit the employment of females, e.g., the employment of females in certain occupations, in jobs requiring the lifting or carrying of weights exceeding certain

genuineness"[4] in the employment of actors or actresses, fashion models, and the like.[5] If the exception is to be limited[6] as Congress intended, the Commission has given it the only possible construction.

When performance characteristics of an individual are involved, even when parental roles are concerned, employment opportunity may be limited only by employment criteria that are neutral as to the sex of the applicant.

---

prescribed limits, during certain hours of the night, or for more than a specified number of hours per day or per week.

"(2) The Commission believes that such State laws and regulations, although originally promulgated for the purpose of protecting females, have ceased to be relevant to our technology or to the expanding role of the female worker in our economy. The Commission has found that such laws and regulations do not take into account the capacities, preferences, and abilities of individual females and tend to discriminate rather than protect. Accordingly, the Commission has concluded that such laws and regulations conflict with Title VII of the Civil Rights Act of 1964 and will not be considered a defense to an otherwise established unlawful employment practice or as a basis for the application of the bona fide occupational qualification exception." 29 CFR § 1604.1.

[4] 29 CFR § 1604.1 (a) (2), n. 3, *supra*.

[5] See 110 Cong. Rec. 7217 (memorandum of Sens. Clark and Case).

[6] 110 Cong. Rec. 7213 (memorandum of Sens. Clark and Case).