**Nettie Mae LOGAN, Appellant,**

v.

**The GENERAL FIREPROOFING COMPANY, a corporation, Appellee.**

**No. 15272.**

United States Court of Appeals, Fourth Circuit.

Argued May 3, 1971.

Decided July 23, 1971.

Robert Belton, Charlotte, N. C. (J. Le-Vonne Chambers, Adam Stein, Charlotte, N. C., Conrad O. Pearson, Durham, N. C., William L. Robinson, Sylvia Drew, Jack Greenberg, New York City, and

---

Chambers, Stein, Ferguson & Lanning, Charlotte, N. C., on brief) and David Copus, Atty., E. E. O. C. (Stanley P. Hebert, Gen. Counsel, David W. Zugschwerdt, Acting Chief, Trial Section, and Marian Halley, Atty., E. E. O. C., on brief), for appellant.

Jesse S. Hogg, Coral Gables, Fla. (J. Toliver Davis, Asheville, N. C., and Greene, Hogg & Allen, Coral Gables, Fla., on brief), for appellee.

Before HAYNSWORTH, Chief Judge, and CRAVEN and RUSSELL, Circuit Judges.

DONALD RUSSELL, Circuit Judge:

Asserting a denial of employment on account of "race and color", the plaintiff filed this individual and class action against the defendant under Sections 2000e and 1981, 42 U.S.C. The appeal is from an order of the District Court granting defendant's motion for summary judgment. We reverse.

The defendant is a furniture manufacturer, with plants in various parts of the United States. Its business is plainly within the scope of Section 2000e of the Civil Rights Act of 1964. In 1963 or 1964, it began operating a plant in Forest City, North Carolina. This plant normally employed about 450 persons. Its employees were hired, as the occasion arose, on a "walk-in" basis and lived in areas within commuting distance of the plant. The plaintiff herself lives at Bostic, North Carolina, about 5 or 6 miles from Forest City. She is a Negro, married, with 9 children, three of pre-school age. On March 16, 1966, she applied in person to the defendant for employment. According to her testimony, she did so in response to a radio advertisement for employees. The defendant denied any such advertisement. At any rate, the defendant offered her no employment at the time. She again applied in person unsuccessfully for employment in June, 1966. At some time either during or between these two visits, it would appear from the affidavits filed by the defendant, the plaintiff inquired of the defendant's personnel manager about her application for employment and was given to understand that her large family and her "overweight" disqualified her for employment. The plaintiff, also, claimed in her deposition that at some time during this same period, she telephoned the defendant about her request for employment and was told by the person answering the telephone that the defendant had job openings for men but not for women. Following the denial of her personal application in June, 1966, the plaintiff filed a charge of discrimination in denial of employment because, as she alleged in her original charge, she was a "Negro woman".[1] One year later the Commission found reasonable cause to sustain the charge of discrimination and, within 30 days of receiving advice to such effect, the plaintiff filed this action.

In her complaint, the plaintiff charged that the defendant had engaged in discrimination in its employment practices by:

1. Discriminating against Negro applicants for employment on the grounds of race or color;

2. Limiting Negroes to lower paying jobs;

3. Paying Negroes lower wages than whites for the same work; and

4. Failing to post Equal Employment Opportunity Commission posters in its plant.

In support of these claims, she alleged specifically that, of defendant's 440 employees, only 30, including 3 women, were Negroes. She sought both injunctive and declaratory relief, as well as the award of a job, with back pay, and attorney's fees.

After certain preliminary motions, the defendant answered. Interrogatories were exchanged and answered. The plaintiff was deposed by the defendant.

1. It would appear that in her original charge, the plaintiff claimed discrimination by Burlington Industries and the North Carolina Employment Agency, as well as the defendant.

On the record thus made and certain supporting affidavits, defendant at this point moved for summary judgment in its favor. In reply, the plaintiff submitted her own affidavit. The motion came on for disposition before the District Court, which, after hearing arguments, granted the motion and this appeal followed.

■ If the issues involved were confined strictly to racial discrimination, a majority of the panel would be inclined to affirm, even though ordinarily summary disposition of Title VII cases is not favored, especially on a "potentially inadequate factual presentation". *Williams v. Howard Johnsons's Inc. of Washington* (4th Cir. 1963) 323 F.2d 102, 105; see, however, *Grimm v. Westinghouse Electric Corporation* (D.C.Cal.1969) 300 F.Supp. 984, 991, note 4. The record contains no evidence that the defendant paid lower wages to Negroes than to whites for the same work.[2] In fact, the evidence seemed positive to the contrary. There is some dispute in the record whether there were any Negro supervisors before plaintiff filed her charge with the Commission but there was no evidence in the record that any qualified Negro had been passed over for promotion or that Negroes had been confined to lower paying jobs.[3] It is true no Negroes were employed in the executive department and only one in the clerical department. The defendant stated in its affidavits that it had been unable to secure any qualified Negroes (other than the one employed in the clerical department) for employment in these two departments. This was not disputed or controverted by the plaintiff in her showing on the motion. It seems, also, to have been recognized that the defendant had erected the Commission's posters. It accordingly seems fair to assume, as the District Court did, that plaintiff's claim of racial discrimination was at this stage confined to the defendant's hiring practices. On this issue, the record includes no direct evidence that would identify any Negro who had been specifically denied employment because of his or her race or color.

■■ The plaintiff submits, however, that, on the basis of statistical material in the record, an inference of racial discrimination was warranted and that such inference precluded the grant of summary judgment. The use of statistical material such as that involved here has been frequently approved as an acceptable method of evaluating compliance with the requirements of Title VII. *United States v. Dillon Supply Company* (4th Cir. 1970) 429 F.2d 800, 802; *Cypress v. Newport News General & Nonsectarian Hosp. Ass'n.* (4th Cir. 1967) 375 F.2d 648, 654; *Jones v. Lee Way Motor Freight, Inc.* (10th Cir. 1970) 431 F.2d 245, 247, cert. den. 401 U.S. 954, 91 S.Ct. 972, 28 L.Ed.2d 237. As the Court put it in *Jones,* "In racial discrimination cases, statistics often demonstrate more than the testimony of many witnesses, and they should be given proper effect by the courts." When properly weighed and considered, "Courts listen" to such evidence. *State of Alabama v. United States* (5th Cir. 1962) 304 F.2d 583, 586, aff. 371 U.S. 37, 83 S.Ct. 145, 9 L.Ed.2d 112; *Parham v. Southwestern Bell Telephone Co.* (8th Cir. 1970) 433 F.2d 421, 426. But statistics must not be accepted uncritically, without careful consideration of all relevant factors. Especially where such statistics are "based on community racial proportions", which is the situation in this case, they are often "ambiguous" and "ought to be listened to with a critical ear." Note, *Employment Discrimination and Title VII of the Civil Rights Act of 1964,* 84 Har.L.Rev. 1109, 1154 (1971). As already stated, a majority of the panel, after giving careful consideration to the statistical mate-

---

2. This may not have been true, according to the present record, as applied to male and female workers.

3. Cf. *Quarles v. Philip Morris, Incorporated* (D.C.Va.1968) 279 F.Supp. 505, 508:

"But the plaintiffs have not shown any instance of a qualified Negro being denied employment or promotion to a supervisory position."

rial, would be inclined to affirm the conclusion of the District Court that, on the basis of the record before it, there was insufficient evidence to justify an inference of racial discrimination. But this conclusion does not dispose of plaintiff's claim. As the Equal Employment Opportunity Commission[4] has emphasized both in its brief and in oral argument, the record is sufficient to raise a genuine issue of fact whether the plaintiff was the victim of sex discrimination.

In her original charge, filed with the Commission, plaintiff claimed her denial of employment was because she was a "Negro woman".[5] The Commission touched at least inferentially on sex discrimination in its decision. After suit, the plaintiff testified during her examination she was told that the defendant was hiring men but not women. In the affidavits submitted by the defendant as a part of its affirmative showing in support of its motion for summary judgment, the defendant, on the other hand, denied any consideration "of race or sex" in its hiring practices. The defendant conceded in its affidavits, however, that, while it had no specific rule "that women with so many children could not be employed" the fact that an applicant was a woman "with so many children" was a "factor, along with other factors, in determining whether a person was suitable for employment." It went further and sought to explain why this was a factor to be considered in the proper operation of its plant. In so doing, it went beyond a mere disclaimer of sex discrimination and sought to justify its denial of employment to women with a number of children under the so-called "BFOQ exception" in Section 2000e–2(e).[6] The issue of sex discrimination was accordingly posed by the record; it was an issue on which both parties had made affirmative showings and was one on which the District Court was obligated to rule.[7] Whether the facts in the case, as finally established, are sufficient to sustain a charge of sex discrimination should, as a result of the conflict in the testimony and the issue of credibility, be determined not by summary judgment, but after trial, on a proper record, giving due effect to Section 2000e–2(e) of the Act. See, *Phillips v. Martin Marietta Corp.* (1971) 400 U.S. 542, 544, 90 S.Ct. 496, 27 L.Ed.2d 613; *Lansdale v. Air Line Pilots Association International* (5th Cir. 1970) 430 F.2d 1341, 1342; *Local 246, Util. Wkrs. U. v. Southern California Edison Co.* (D.C.Cal. 1970) 320 F.Supp. 1262; 84 *Har.L.Rev.* 1171–3.

The order of the District Court is accordingly reversed, in order that this disputed issue of sex discrimination may be properly considered by the District Court. Of course, plaintiff will not be foreclosed on such remand from offering any evidence she may be able to produce on racial discrimination and such evidence should be considered by the District Court in re-assessing this issue.

*Reversed and remanded.*

---

4. The Equal Employment Opportunity Commission has been granted leave to appear and make both oral and written arguments herein.

5. Cf., *Lea v. Cone Mills Corporation* (D.C.N.C. 1969) 301 F.Supp. 97, modified, 4 Cir., 438 F.2d 86, in which plaintiff's charge as filed with the Equal Employment Opportunity Commission was denial of employment because the grievants were "Negro females". The complaint filed, as here, claimed denial of employment "because of their race". The Court treated the action as one involving both racial and sex discrimination.

6. Section 2000e–2(e) provides that an employer may employ on the basis of "religion, sex, or national origin in those certain instances where religion, sex, or national origin is a bona fide occupational qualification reasonably necessary to the normal operation of that particular business or enterprise, * * *."

7. See, Rule 54(c), Federal Rules of Civil Procedure; Wright & Miller, *Federal Practice & Procedure,* vol. 6, sec. 1493, at p. 470 (1971); *Robinson v. Lorillard Corporation* (4th Cir. 1971) 444 F.2d 791, 803 (1971); *Securities and Exchange Commission v. Rapp* (2d Cir. 1962) 304 F.2d 786, 790; *Lomartira v. American Automobile Insurance Company* (D.C.Conn.1965) 245 F.Supp. 124, 129, aff. 371 F.2d 550.