**Virginia H. REEVES, Plaintiff,**

v.

**BRAND–NAME FASHION OUTLET, A DIVISION OF MANHATTAN INDUS-TRIES, INC., Manhattan Industries, Inc., d/b/a Brand Name Fashion Outlet, Defendants.**

**No. C–80–2593.**

United States District Court,
W. D. Tennessee, W. D.

Jan. 11, 1982.

Dan Norwood, Shields, Richardson, Norwood & Richardson, Memphis, Tenn., for plaintiff.

Etrula R. Trotter, John M. Kuykendall, Weintraub, DeHart, Robinson, Coggin, & Trotter, Memphis, Tenn., Shelley Greenwald, New York City, for defendants.

## FINDINGS OF FACT, CONCLUSIONS OF LAW, ORDER

HORTON, District Judge.

This case is one in which the plaintiff, Virginia H. Reeves, charges sex discrimination in employment. Plaintiff asserts the defendant demoted her from the position of assistant store manager to that of an hourly paid sales clerk because she was pregnant. The defendant, Brand-Name Fashion Outlet, states the plaintiff was demoted because of her unsatisfactory job performance and not because of her pregnancy. For reasons stated in this memorandum, the Court enters judgment for the defendant.

On December 3, 1979, Charles R. Shaughnessy, President, Brand-Name Fashion Outlet, a division of Manhattan Industries, Inc., with home offices in the state of New Jersey, interviewed Mrs. Reeves for a management position in a new retail store being opened by that company in a shopping mall at Lakeland, in Shelby County, Tennessee. On December 5, 1979, Mr. Shaughnessy hired two women to manage that store. Mrs. Sandra Hartman was employed as

Store Manager, Mrs. Reeves was hired as Assistant Store Manager. The new retail store was scheduled to open at Lakeland, on January 7, 1980.

During the period January 2–5, 1980, both women were provided on the job training in one of the defendant's stores located in Ocala, Florida. On the job training was provided by experienced employees of the defendant company. The training included, among other things, learning to operate cash registers, record keeping, reporting requirements, personnel rules, customer relations, inventory ticketing procedures, daily financial reporting and other procedures necessary to conduct the on-going operation of a retail outlet store.

During the early evening of January 2, 1980, while the parties were in Florida, Judy Lane Leighton, a management instructor, drove plaintiff to a restaurant where dinner had been planned for the management group. Mrs. Reeves informed Mrs. Leighton that she was pregnant. Mrs. Leighton informed Mr. Shaughnessy, and others in the group, that she was driving "a lady in a delicate condition." Apparently, that was the defendant's first knowledge that Mrs. Reeves was pregnant.

Due to construction delays, the defendant did not open its store in Lakeland on January 7, 1980, as scheduled. Instead, the store opening was delayed until January 14, 1980, on which date Mrs. Reeves reported for work. On January 17, 1980, Mrs. Reeves was notified by Mr. Shaughnessy that she would be demoted from the position of Assistant Store Manager to a job as sales clerk with the opportunity of working back up into a management position. Rather than accept the demotion, Mrs. Reeves resigned.

Mrs. Reeves testified that she was graduated from Memphis State University in May of 1974. She earned a 3.78 academic average. She had been employed in a management position with Lowenstein's, a large retail store in Memphis. She had acquired four years' experience in the retail marketing field. She said that Mr. Shaughnessy interviewed her twice and offered her a job as assistant manager of the Lakeland store.

The salary was $210 per week or about $11,000 per year. She said she never heard anything from Mr. Shaughnessy about a thirty day trial period. She thought she "hit it off pretty well" with Mr. Shaughnessy.

Mrs. Reeves denied that she reported to work late on January 14, 1980. She denied ever lying on a floor doing nothing. Mrs. Reeves testified that on January 17, 1980, Mr. Shaughnessy told her that he had been watching her performance and she had not been showing initiative. When she asked Mr. Shaughnessy if she was being fired, he said he was demoting her to sales clerk. When she replied that she would not accept that job, Mr. Shaughnessy said "that's it." She also testified that since January 17, 1980, she has been unable to find a comparable job. She is now employed selling insurance and annuities door-to-door earning five to six hundred dollars per month. Mrs. Reeves said, "I feel like they demoted me because I was pregnant."

Mrs. Doris King, a co-worker, did not recall that Mrs. Reeves was late for work on her first day, January 14, 1980. She said that Mrs. Reeves worked about as hard as anyone else and had about as good an attitude.

Plaintiff claims that she has suffered discrimination because of her sex in that she was demoted because of her pregnancy. She states that she has been the victim of disparate treatment because of her sex and because she is the only company employee demoted 1) after less than three weeks on the job, 2) before the end of a training period, and 3) without counselling, warning or a probationary period. Plaintiff also claims that her demotion constituted a constructive discharge from her employment.

Virginia Reeves alleges that she was demoted from assistant store manager to sales clerk because she was pregnant. In effect, Mrs. Reeves states that she has been treated less favorably than her peers because of her sex. Her claim amounts to one of disparate treatment, which in *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), was de-

clared unlawful under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. *Canham v. Oberlin College* 666 F.2d 1057 (6th Cir. 1981). Section 2000e–2 provides:

(a) It shall be an unlawful employment practice for an employer—

(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or

(2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

■ Termination of employment because of pregnancy has a disparate and invidious impact upon the female gender. *Jacobs v. Martin Sweets Co., Inc.*, 550 F.2d 364 (6th Cir. 1977).

■ The plaintiff established a prima facie case of sex discrimination. She was in fact demoted from the position of assistant store manager to sales clerk during the time she was pregnant. She alleged that fact in her complaint. She testified in support of that fact. Pregnancy cannot be the basis for discriminatory treatment. *Phillips v. Martin Marietta Corp.*, 400 U.S. 542, 91 S.Ct. 496, 27 L.Ed.2d 613 (1971).

■ Once the plaintiff established a prima facie case, the burden shifted to the defendant to rebut that prima facie showing of discrimination. The defendant was required to produce evidence demonstrating that the plaintiff was demoted for a legitimate nondiscriminatory reason. The defendant has shown, by a preponderance of the evidence, such a legitimate nondiscriminatory reason. The plaintiff has failed, in the Court's opinion, to show that the prof-

fered explanation was not the true reason for the employment decision. *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). The Court also finds that Mrs. Reeves was not constructively discharged as she claims.

While Mrs. Reeves may have personally thought that she was demoted because of her pregnancy, the preponderance of the evidence overwhelmingly shows that she was demoted because, in the judgment of her employer, her job performance was not satisfactory. The evidence is that Mrs. Reeves failed to demonstrate interest and enthusiasm in her job. She failed to show qualities of motivation and leadership. She did not fit into the type of management structure Brand-Name Fashion Outlet sought to establish for the management of its Lakeland store.

Mr. Shaughnessy testified that he set up the Lakeland store. He interviewed and hired Sandra Hartman as manager of the store and Virginia Reeves as assistant manager. He stated that he was searching for people who were willing to work hard and who had growth potential. Both women went to defendant's Ocala, Florida, store for on the job training. Shaughnessy said that he learned Virginia Reeves was pregnant while they were in Florida. He stated that he asked Judy Leighton why she drove to the restaurant location slowly. Judy answered that she had a passenger in a delicate condition, that Virginia Reeves was pregnant. He recalled that when he interviewed Mrs. Reeves, she wore a granny or sack type dress.

He testified that Virginia Reeves' pregnancy had nothing to do with his decision to demote her from assistant store manager to sales clerk. He said the decision was made during and after the Ocala, Florida, training session. Reports to him were that Virginia Reeves was unsatisfactory, that she was not working well with the registers, and that she had words with customers. He testified that he talked with five people before taking action to demote Mrs. Reeves. The consensus was, he said, that her job

performance was not satisfactory, that she had no drive and no initiative. We were, he said, looking for leadership and she showed us no sign of leadership.

Mr. Shaughnessy described the meeting during which Mrs. Reeves was informed of the decision to demote her from the position of assistant store manager to a job in sales at twenty-five cents per hour above minimum wage. He stated that he told Mrs. Reeves "we" were unhappy with her job performance. He said Mrs. Reeves did not show initiative, motivation or leadership and gave management no reason to feel that she was of leadership quality. Mrs. Reeves, he said, became indignant and said she could not be fired because she was pregnant. She refused the sales job, requested her resume and left the store. All employees, he said, were required to serve a 30 day trial or probationary period. He admitted that Virginia Reeves was the only employee demoted after less than three weeks on the job. Shaughnessy, who said he left the company after fifteen years, never had any employee demoted or terminated because of pregnancy.

Sandra Hartman testified that she was employed by Shaughnessy as Manager of the Lakeland store, that she participated in the on the job training sessions in the store at Ocala, Florida, and has managed the Lakeland store for about two years. She testified that she telephoned Virginia Reeves after Shaughnessy gave her a list of employees hired. She met Mrs. Reeves at a luncheon meeting and thereafter they went to Florida for training.

Judy Lane Leighton, testified that she had been with Brand-Name Fashion five years and managed the Ocala, Florida, store. She participated in the training of Virginia Reeves. Mrs. Leighton testified that Virginia Reeves seemed capable but had no interest in it. She did not give the attention to the training that she should have. She never asked questions about job responsibility. If I did not tell her to do something, she would go into the office and sit down. She said Mrs. Reeves asked about leave, employee benefits and how fair the company and Mr. Shaughnessy were. She compared Sandra Hartman with Virginia Reeves. Hartman she said, asked a number of questions and seemed interested in her work. Finally, she said she was not impressed with Virginia Reeves because of her lack of interest and would not want her on "my staff."

Trudy Garner testified that she is employed as a Floor Supervisor in the Ocala, Florida store. She recalled that Mrs. Reeves sent them a real nice note after the training session. She testified that Mrs. Reeves stated that she, Reeves, should have been selected manager.

Faye Truesdale testified that she has, for six years, managed the defendant's Greensboro, North Carolina, store. She has helped train twelve to fourteen employees in six or seven states. She stated that Mrs. Reeves did not follow instructions and just walked around "killing time." When Mr. Shaughnessy asked her opinion of Mrs. Reeves, she said:

I told him I did not think she was qualified, that she had a sharp attitude and I would not work with her.

The Court's finding that a preponderance of the evidence shows that Mrs. Reeves was demoted due to unsatisfactory job performance and not for reasons of pregnancy is supported, in part, by the Court's observations of the women who manage and work in some of the defendant's stores. The women appeared to be assertive, motivated, take charge type of people with a rather strong sense of loyalty and mission demonstrated in their job performance.

Sandra Hartman remained in the Lakeland store until midnight on one occasion moving a large number of boxes to facilitate completion of construction work on the store. She stated that "we had a job to do and it had to be done."

Judy Lane Leighton, Manager of the Ocala, Florida, store has been with Brand-Name Fashion Outlet five years. In addition to training new employees in Florida, she has traveled to new stores to train new employees. In her testimony she stressed

such qualities as interest, attention, and responsibility.

Trudy Garner, an employee in the Ocala, Florida, store stressed attitude toward customers. She testified that she heard Virginia Reeves tell a customer, "well you're no crook." That, she said was an embarrassing way to talk to a customer.

Faye Truesdale, Manager of the defendant's Greensboro, North Carolina store for six years testified that she had helped train twelve to fourteen people in six or seven states. Obviously a person possessing drive and motivation, Mrs. Truesdale stated that Virginia Reeves was the worst "I have ever worked with."

Corrine Owen, who has served as Systems Organization Manager, Operations Manager and Administrative Assistant to the President of defendant company, testified that company training is on the job training. She said that she could not see Reeves as "our type of manager at that time." Mrs. Owen said "we" thought demotion the best answer. If Reeves showed signs of improvement in sales, then she could work her way back up to supervisor. She said "we" called her into the office before lunch at which time Mr. Shaughnessy informed Mrs. Reeves of the decision to demote her from assistant store manager but provide her an opportunity in sales. Mrs. Reeves stated that she would not work for minimum wage, did not want a job as sales clerk, requested her resume and left the store.

Based upon consideration of all of the evidence in the record in this case, the Court concludes that Brand-Name Fashion Outlet acted upon legitimate, nondiscriminatory reasons, and not upon discrimination because of pregnancy, in its decision to demote plaintiff.

It is therefore by the Court

ORDERED that judgment in this case be granted the defendant. Plaintiff's complaint is dismissed. Defendant's pending motion for sanctions against plaintiff is also dismissed.