Carol Green Clerk, Kansas Supreme Court Kansas Judicial Center 3rd Floor Topeka, Kansas 66612
Dear Ms. Green:
You request an opinion on behalf of the chairman of the Supreme Court nominating commission concerning whether the commission is subject to title 7 of the civil rights act of 1964, as amended by the equal employment opportunity act of 1972 (42 U.S.C.S. secs. 2000e et seq.) (title 7), the Americans with disabilities act (42 U.S.C.S. 12,101 etseq.) (ADA) and the Kansas act against discrimination (K.S.A. 1992 Supp.44-1001 et seq.) (KAAD). In addition, you request our opinion concerning the legality of certain screening practices.
 TITLE 7
The Supreme Court nominating commission is established by the Kansas constitution and its purpose is to nominate and submit to the governor the names of persons for appointment to the Supreme Court and the Court of Appeals. Kan. Const., art. 3, sec. 5(d) and K.S.A. 20-3004. The commission is comprised of attorneys and one non-attorney who serve fixed terms and who are compensated for their services and reimbursed for expenses from the state treasury. K.S.A. 20-124, 20-125, 20-137, 20-138.
When a vacancy in the appellate courts occurs, it is the practice of the clerk to send written notice to all Kansas attorneys informing them of the vacancy and inviting applications to be submitted to the commission. The commission interviews all of the applicants and submits three names to the governor who then makes a selection. K.S.A. 20-132
and 20-3007.
42 U.S.C.S. sec. 2000e-2 states, in relevant part, as follows:
 "It shall be an unlawful employment practice for an employer —
 "(1) to . . . refuse to hire . . . any individual . . . because of such individual's race, color, religion, sex or national origin; or
 "(2) to limit, segregate, or classify . . . applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities . . . because of such individuals race, color, religion, sex, or national origin."
"Employer" includes governments, governmental agencies, and their agents. 42 U.S.C.S. sec. 2000e(a) and (b). An applicant for employment is an "employee" for purposes of title 7 unless an exemption applies.Starrett v. Wadley, 876 F.2d 808, 821, note 18, (10th Cir. 1989). InStillians v. State of Iowa, 843 F. Supp. 276 (8th Cir. 1988), an employee of the Iowa arts council sought the position of director, a position created by statute which provided that vacancies be filled by nomination from the council and appointment by the governor. The employee was not selected and sued the state under the age discrimination in employment act (ADEA) for failing to promote her. The court dismissed her claim relying on the definition of "employee" which exempts from the definition an "appointee on the policy making level."29 U.S.C.S. sec. 630(f). The court concluded that since the plaintiff was applying for a position on the policy making level she did not fall within the definition of "employee" for purposes of the ADEA. Andersonv. City of Albuquerque, 690 F.2d 796 (10th Cir. 1982) is a title 7 case where the court concluded that since the definition of "employee" and the exemptions are identical to those used in the ADEA, a job applicant who was not seeking an appointment on a policy making level was covered under title 7. Finally, in the United States Supreme Court case of Gregory v.Ashcroft, 501 U.S. ___, 115 L.Ed.2d 410, 111 S.Ct. 239 (1991) the court affirmed the 8th circuit's determination that a judge is an "appointee on the policy making level" for purposes of the ADEA.
 "We stated in Stillians that the purpose of the policy making level exception was to give state governors broad discretion to fill policy making positions without fear of being sued by disappointed office seekers. The governor of Missouri must have the freedom to appoint as judges the persons he feels are best qualified without fear of subjecting himself to age discrimination claims." Gregory, 898 F. Supp.2d 598, 604 (8th Cir. 1990).
Therefore, it is our opinion that an applicant for a vacancy on the Kansas appellate courts is not an "employee" for purposes of title 7 and would not be afforded coverage under the act because of the exemption for appointees on a policy making level.
 AMERICANS WITH DISABILITIES ACT
The ADA utilizes the term "covered entity" and prohibits such entity from engaging in discrimination by limiting, segregating or classifying a job applicant who is a qualified individual with a disability in a way that adversely affects the applicant's job opportunities.42 U.S.C.S. sec. 12112(a) and (b)(1). A covered entity discriminates by using qualification standards or other selection criteria that screen out or tend to screen out an individual with a disability unless the selection criteria is shown to be job related for the position and is consistent with business necessity. An "employer" is included in the definition of a "covered entity". 42 U.S.C.S. sec. 12111(2).
The definition of employer is the same as title 7's definition which includes governments, governmental agencies and their agents.42 U.S.C.S. sec. 12111(5), 42 U.S.C.S. sec. 2000e(b),42 U.S.C.S. sec. 12111(7), 42 U.S.C.S. sec. 2000e(a). "Employee" is simply defined as an "individual employed by an employer," and there is no exemption for appointees on a policy making level.42 U.S.C.S. sec. 12111(4). Both title 7 and the ADA contain the same language prohibiting discrimination which includes "limiting, segregating, or classifying a job applicant" in such a manner that it adversely affects an applicant's job opportunities.42 U.S.C.S. sec. 12112(b)(1) and 42 U.S.C.S. sec. 2000e-2(a)(2).
In the absence of any case law construing the ADA provisions at issue here, and in light of the similarity between the ADA and title 7, we rely on title 7 case law to determine whether the ADA applies to the commission.
Title 7 is liberally construed in order to effectuate its policies and this liberal construction is also bestowed on the definition of "employer". Owens v. Rush, 636 F.2d 283 (10th Cir. 1980). In Owens, an employee of the sheriff's department sued the sheriff under title 7 and the district court concluded that the sheriff was not an employer because he lacked the requisite 15 or more employees. The 10th circuit court of appeals reversed and concluded that the sheriff was an agent of the county and, under title 7, it was immaterial that he lacked the requisite number of employees because the county did have the requisite number, and consequently, the sheriff could be sued because he was the county's agent. It is our opinion that the commission is an agent of the state and that while the commission does not have the authority to employ the applicant, it does serve as a screening device by selecting only three candidates, one of whom is then chosen by the governor. Under title 7 case law, an "employer" may be any person who significantly affects access of any individual to employment opportunities regardless of whether that person can be described as an "employer" as that term has generally been defined at common law. Livingston v. Ewing, 601 F.2d 1110,1114 (10th Cir. 1979), citing Sibley Memorial Hospital v. Wilson,488 F. Supp. 1338 (D.C. 1973) and Puntolillo v. New Hampshire RacingCommission, 375 F. Supp. 1089 (D. New Hampshire 1974). Also see Doe onbehalf of Doe v. St. Joseph Hospital 788 F.2d 411 (7th Cir. 1986), Spirtv. Teachers Insurance and Annuity Assoc., 691 F.2d 1054, 1063 (2nd Cir. 1982), Gomez v. Alexian Brothers Hospital, 698 F.2d 1019, 1021 (9th Cir. 1983), Christopher v. Stouder Memorial Hospital, 936 F.2d 870 (6th Cir. 1991).
In Sibley Memorial Hospital v. Wilson, supra, a male private duty nurse sued the hospital under title 7 alleging that the hospital had discriminated against him because it refused to refer him to patients requesting a private duty nurse whenever the patient was female. Evidently, a hospital patient who required the services of a private duty nurse would ask the hospital to communicate that need to the nurse's registry. The patient's request was telephoned to the official registry which matched the request with the name of the nurse who had indicated his or her availability. The nurse would then report directly to the patient for possible employment. The plaintiff found himself in the position of always being rejected by the nurses operating the registry when the patient was female. The court concluded that title 7 applied to those who control access to employment and who deny access by reference to invidious criteria. In Puntolillo v. New Hampshire Racing Commission, the plaintiff was a driver-trainer of harness horses who filed a title 7 claim against the state racing commission and the trotting and breeding association which was responsible for conducting harness racing at certain parks. The court concluded that even though drivers are employed directly by the horse owner, it was the racing commission and the trotting and breeding association which controlled and assigned stall space at the parks which was a prerequisite for employment by a horse owner. Therefore, title 7 would apply even though the relationship between the plaintiff and the racing commission did not involve the normal incidents of a typical employment relationship. Citing Sibley, the court found that the state defendants were "employers" and would potentially be liable because they controlled access to the plaintiff's job market.
Following the reasoning in these cases, it is our opinion that the commission is a "covered entity" and, therefore is subject to the ADA because it significantly controls access to positions on the Kansas appellate courts.
 KANSAS ACTS AGAINST DISCRIMINATION
The KAAD uses the language of title 7 and the ADA to prohibit employers from using unlawful employment practices which include the following:
 (1) Refusal to hire or employ a person on the basis of his or her race, religion, color, sex, disability, national origin or ancestry. K.S.A. 1992 Supp. 44-1009(a)(1) and 42 U.S.C.S. sec. 2000e-2(a)(1).
 (2) Segregating or classifying a job applicant because of a disability. K.S.A. 1992 Supp. 44-1009(a)(8)(A) and 42 U.S.C.S. sec. 12112(b)(1).
 (3) Using qualification standards, employment tests or selection criteria that screen out or tend to screen out an individual with a disability. K.S.A. 1992 Supp. 44-1009(a)(8)(G) and 42 U.S.C.S. sec. 12112(b)(6). "Employer" includes the state of Kansas, K.S.A. 1992 Supp. 44-1002(b).
While title 7 cases are not controlling in KAAD actions, they are persuasive when one considers the comparability of the provisions of both. Woods v. Midwest Conveyor Company, 231 Kan. 763 (1982), Best v.State Farm Mutual Auto Insurance Company, 953 F.2d 1477, 1480 (10th Cir. 1991). In the absence of any case law to the contrary and taking into consideration that K.S.A. 1992 Supp. 44-1006 mandates a liberal construction of the KAAD to accomplish its purposes, it is our opinion that the reasoning in Sibley Memorial Hospital (which has been adopted in the 10th Circuit) is applicable here and, therefore, the commission is an "employer" and subject to the KAAD.
 LEGALITY OF SCREENING PRACTICES
Because the commission is subject to the ADA and the KAAD you request our opinion concerning certain screening procedures. Specifically, you request whether the commission may do the following:
"(1) Request (but not require) that a recent photograph accompany the nomination form?"
Our research found no cases concerning photographs and it is our opinion that the issue is how the photograph is used. Obviously, if it is used to screen out individuals based upon their race or sex, the use of the photograph would violate the KAAD. However, if the photograph is utilized for nondiscriminatory purposes then we see no legal impediment to requesting that an applicant provide one. Absent an explanation of why the commission requires a photograph, we cannot render an opinion concerning the propriety of doing so.
"(2) Ask on the nomination form whether the potential nominee is married, the spouse's name, the number of children, and the children's names and ages?"
Martial status is not protected under title 7 and, in our opinion, the KAAD, because it does not fall within the classifications listed in either act. Cooper v. Delta Airline, 274 F. Supp. 781 (E.D.La. 1967). However, while the question itself may not be legally repugnant, the issue is how the commission treats the information that is gained from the response. For example, if the commission uses the information to discriminate against women with preschool children while not applying the same standard to male applicants, that action may violate the KAAD's prohibition against sex discrimination. Phillips v. Martin Marietta Corp.,411 F.2d 1 (5th Cir. 1969), reversed for other reasons, 400 U.S. 542,27 L.Ed.2d 613, 91 S.Ct. 496 (1971). Again, absent an explanation of why the commission seeks this information, we cannot render a specific opinion on the propriety of doing so.
In short, the commission may ask the question as long as it does not use the information to discriminate against the applicant.
"3. Ask on the nomination form a series of health-related questions. Specifically:
"(a) Your vision (with glasses if you use them).
 "(b) Any limitations on your hearing (with an aid, if you use one).
 "(c) A description of any treatment for alcohol or substance abuse or an emotional illness within the past five years.
 "(d) Please state the date of your last physical examination and give your doctor's name and address and whether or not you would consent to having the Commission review that report.
 "(e) Please describe the reason for admission to any hospital (exclusive of emergency rooms visits) within the past five years."
42 U.S.C.S. sec. 12112(d)(1) provides that discrimination includes medical examinations and inquiries. 42 U.S.C.S. sec. 12112(d)(4) prohibits preemployment medical examinations and medical inquiries concerning whether the employee has a disability and, if so, the nature and the severity of the disability unless the inquiry is job related and consistent with business necessity. An employer may make preemployment inquiries into the ability of the applicant to perform job related functions. 42 U.S.C.S. sec. 12112(d)(2)(B).
In the absence of case law, we rely upon the United States equal employment opportunity commission's technical assistance Manual which prohibits any medical inquiry during the preemployment stages. E.E.O.C. Technical Assistance Manual, January 1992, section 5.5(a). The manual contains a list of prohibited queries and questions (c) and (e) are flatly prohibited. The remaining questions are also prohibited because they constitute medical inquiries. It is our opinion that until there is case law which construes these provisions, it would be advisable for the commission to avoid these questions.
 SUMMARY
It is our opinion that the commission is not subject to title 7 of the civil rights act of 1964, as amended, but is subject to the ADA and the KAAD. Furthermore, while the screening procedures relating to the photograph and the domestic situation of an applicant are not legally repugnant, if the information gained is used to discriminate on the basis of classifications listed at K.S.A. 1992 Supp. 44-1009(a)(1), the commission may be liable. Finally, it is our opinion that the medical inquiries are prohibited under the ADA and the KAAD unless the inquiry is job related.
Very truly yours,
 ROBERT T. STEPHAN Attorney General of Kansas
 Mary Feighny Assistant Attorney General
RTS:JLM:MF:jm