**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

EMILIE S. FRAZIER,
<u>Plaintiff-Appellant,</u>

v.

No. 95-1290

LLOYD M. BENTSEN, Secretary of
Treasury,
<u>Defendant-Appellee.</u>

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Claude M. Hilton, District Judge.
(CA-94-791-A)

Argued: January 31, 1996

Decided: August 8, 1996

Before RUSSELL and HAMILTON, Circuit Judges, and BLAKE,
United States District Judge for the District of Maryland,
sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** John F. Karl, Jr., MCDONALD & KARL, Washington,
D.C., for Appellant. Theresa Carroll Buchanan, Assistant United
States Attorney, Alexandria, Virginia, for Appellee. **ON BRIEF:**
Michaele Snyder Battles, KIBLAN & BATTLES, McLean, Virginia,
for Appellant. Helen F. Fahey, United States Attorney, Alexandria,
Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Emilie S. Frazier, a white, Jewish woman, applied for a competitive position with the Internal Revenue Service ("IRS"). When she did not receive the position, she brought an action against the Secretary of the Treasury under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. She appeals from the district court's granting of summary judgment in favor of the defendant. For the following reasons, we affirm the judgment.

I.

Frazier was an employee of the IRS from October 1978 until September 1985, when she resigned to raise her children. At the time of her resignation, she held the position of Computer Specialist and drew salary at the GS-12 level. She was an exemplary employee. Her final evaluation, dated January 11, 1985, resulted in an "Outstanding" performance appraisal. Furthermore, she received two awards during her tenure with the IRS: a Special Achievement Award in October 1983 and a Sustained Superior Performance Award in 1985.

When her youngest child reached school age, Frazier sought re-employment with the IRS. In May 1992, she applied for the position of Program Analyst in its Information Systems Development Office. Her application included her final evaluation and the awards she had earned.

The position for which Frazier applied was open to current and former employees of the government and was subject to the collective bargaining agreement between the National Treasury Employees Union and the IRS, known as NORD III. The hiring procedure required the IRS to appoint a "ranking official," who evaluated the applications for the position according to a scoring system provided

2

in article 13, section 5(J) of NORD III.**1** The ranking official then placed the top six candidates on the "best qualified" list, which was forwarded to the selecting official. The selecting official interviewed these "best qualified" candidates and chose one to fill the open position.

Pamela J. Sweeney, a white woman, was the ranking official who conducted the initial scoring of the applications for the Program Analyst position. When considering Frazier's application, Sweeney gave Frazier full credit for her "outstanding" performance appraisal and for her Sustained Superior Performance award. As a result, Sweeney placed Frazier on the "best qualified" list. When Sweeney completed her evaluations, she returned the list to the personnel office.

Fayette Forbes, an African-American woman, was the personnel staffing specialist who reviewed the accuracy of the evaluations. Forbes discovered a number of errors with respect to Frazier's application. She noted that Frazier should not have received full credit for her "Outstanding" performance appraisal. The vacancy announcement for the position, as well as § 0335.263(3)(b) of the Internal Revenue Manual, required applicants to submit a performance appraisal that was completed within the last twelve months. Section 4I of the Handbook provided that if an applicant failed to submit a current performance appraisal, he or she is presumed to have average performance rankings. Because Frazier's "Outstanding" performance evaluation was more than seven years old, Forbes concluded that Frazier should have received scores for average performance instead of outstanding performance. Forbes also noted that Frazier should not have received credit for her seven-year-old performance award because, under the NORD III scoring system, an applicant may receive points only for performance awards received within the past three years.

After consulting her supervisor, Joyce Sanders, an African-American woman, Forbes called Sweeney and informed her of the errors. When Sweeney was informed of the requirements in NORD

_____

**1** Rules governing the application and rating process were also contained in the Contract Administration Handbook (the"Handbook") that administered NORD III, as well as the Internal Revenue Manual and the Federal Personnel Regulations.

3

III, the Handbook, and the Internal Revenue Manual, she agreed to the changes lowering Frazier's score. Forbes also noticed that another candidate, Karen Rutledge (also an African-American woman), had not received credit for three performance awards that she had received within the last three years. When Forbes pointed out this inaccuracy, Sweeney agreed to that Rutledge's score should be revised upward. As a result of these changes, Frazier was removed from the "best qualified" list; Rutledge, who had not previously scored among the top six applicants, was placed on the list.

The selecting official for the Program Analyst position, Hugh Davis, an African-American man, received the revised "best qualified" list and interviewed the six candidates. Davis did not interview Frazier for the position because she was not on the "best qualified" list. Davis selected Linda Perryman, an African-American woman, to fill the position, in part, because he had viewed her work previously during a temporary assignment.

On June 13, 1994, Frazier filed a complaint in the United States District Court for the Eastern District of Virginia against Lloyd Bentsen, the Secretary of the Treasury (the "Secretary"). In Count I, she alleged that the IRS's rules precluding the use and consideration of old performance appraisals and performance awards have a disparate impact upon white women because they are more likely to be out of the work force for more than one year while they raise their children. In Count II, Frazier alleged that Forbes discriminated against her based on race, color, religion, and national origin when she lowered her score and removed her from the "best qualified" list.[2] After the close of discovery, the Secretary filed a motion for summary judgment, which the district court granted. Frazier filed a timely appeal.

II.

We review the district court's grant of summary judgment de novo. Evans v. Technologies Applications & Serv. Co. , 80 F.3d 954, 958

_____

[2] Frazier's complaint originally contained three other counts, but the parties stipulated to their dismissal on November 17, 1994.

4

(4th Cir. 1996). To prevail on a motion for summary judgment, the moving party must demonstrate the absence of a genuine issue of any material fact such that the party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). To determine whether a genuine issue of material fact exists, we construe all facts and reasonable inferences drawn therefrom in favor of the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The non-moving party may not rest on its pleadings alone, but must show that specific, material facts exist that give rise to a genuine triable issue. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). The non-moving party may not "create a genuine issue of material fact through mere speculation or the building of one inference upon another." Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985). Although courts should be cautious when considering a summary judgment motion in a discrimination case because motive is often the critical issue, summary judgment remains appropriate if the plaintiff cannot prevail as a matter of law. Evans, 80 F.3d at 958-59. Thus, summary judgment should be granted where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, such as where the non-moving party has failed to make a sufficient showing on an essential element of the case that the non-moving party has the burden to prove. See Celotex, 477 U.S. at 322-23.

A.

We turn first to Frazier's disparate treatment claim. To meet her burden of proof on summary judgment, Frazier may proceed under ordinary standards of proof or under the burden-shifting scheme set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). See Evans, 80 F.3d at 959; EEOC v. Clay Printing Co., 955 F.2d 936, 940 (4th Cir. 1992). To satisfy ordinary standards of proof, Frazier must offer direct or circumstantial evidence that the defendant acted with discriminatory motive. Evans, 80 F.3d at 959. The record reveals no direct or indirect evidence that Forbes acted with discriminatory intent when she lowered Frazier's application score and removed her from the best qualified list. In fact, Frazier admitted during her deposition that she filed her suit based solely on her personal,

5

subjective feeling that she had been discriminated against.[3] The courts have created the alternate burden-shifting scheme set forth in McDonnell Douglas precisely because it is so difficult to prove discriminatory motive. See Goldberg v. B. Green & Co., 836 F.2d 845 849 (4th Cir. 1988).

Under the McDonnell Douglas framework, the plaintiff bears the burden of proving by a preponderance of the evidence a prima facie case of discrimination. If the plaintiff succeeds in proving a prima facie case, the burden shifts to the defendant to articulate some legitimate, non-discriminatory reason for its employment action. Should the defendant carry this burden, the plaintiff has the opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination. Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 252-53 (1981) (citing McDonnell Douglas, 411 U.S. at 802). Although the McDonnell Douglas test shifts the burden of production, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." Id. at 253. At the summary judgment stage of the proceedings, "assessing the burden of production helps the judge determine whether the litigants have created an issue of fact to be decided by the jury." Id. at 255 n.8. The shifting burdens of production "is intended progressively to sharpen the inquiry into the elusive factual question of intentional discrimination." Id.

To establish a prima facie case, the plaintiff must show by a preponderance of the evidence (1) that she is a member of a protected

_____

[3] In her deposition, the following exchange occurred:

BY MS. BUCHANAN:

Q: But you don't have anything specific to support your feeling that you were being discriminated against individually on the basis of race, religion, color, national origin, or sex. It's just your own personal feeling that you were.

BY MS. FRAZIER:

A: Yes.

Joint Appendix ("J.A.") at 88.

6

class; (2) that she applied for and was qualified for the position; (3) that, despite her qualifications, she was denied the position; and (4) that, after her rejection, the position remained open and the employer continued to seek applicants with the plaintiff's qualifications. McDonnell Douglas, 411 U.S. at 802; Williams v. Cerberonics, 871 F.2d 452, 455 (4th Cir. 1989). The burden of establishing a prima facie case is "not onerous," Burdine, 450 U.S. at 253, but it requires the plaintiff to demonstrate that her rejection did not result from the two most common legitimate reasons for rejecting a job applicant: a lack of qualifications and the absence of a vacancy in the job sought. International Brotherhood of Teamsters v. United States, 431 U.S. 324, 358 n.44 (1977).

The McDonnell Douglas test was never meant to be an inflexible formulation of the elements of a prima facie case. The Supreme Court recognized that "[t]he facts necessarily will vary in Title VII cases, and the specification . . . of the prima facie proof required from [a plaintiff] is not necessarily applicable in every respect to differing factual situations." McDonnell Douglas, 411 U.S. at 802 n.13. The McDonnell Douglas test sets forth the elements of a prima facie case for a plaintiff who claims that he or she was not hired for a job because of discrimination. Frazier, however, does not claim that she was the victim of discrimination because she was not hired for the position of Program Analyst; she claims that, but for discrimination, she would have remained on the "best qualified" list and would have been considered for the position by the selecting official. She does not dispute that the selecting official could still have hired another applicant, even if she had remained on the "best qualified" list.

Because Frazier alleges that discrimination caused her removal from the "best qualified" list and not her failure to receive the job, we cannot apply the McDonnell Douglas factors strictly. To make out a prima facie case of discrimination, therefore, Frazier must show that she was qualified to be on the "best qualified" list, not simply that she was qualified for the position of Program Analyst. Frazier cannot raise the inference that her removal from the "best qualified" list was the result of discrimination if she cannot first negate the possibility that she was removed from the list because she was unqualified.

Frazier fails to establish a prima facie case of discrimination because she was never qualified to be on the "best qualified" list.

7

Under the rules for scoring job applications set forth in NORD III and related regulations, Frazier could not receive credit for her outstanding performance appraisal because it was more than twelve months old. Furthermore, she could not receive credit for either of her performance awards because they were more than three years old. The applicable rules required the ranking official to presume that Frazier had only average performance rankings. Because the ranking official could not use Frazier's old performance evaluation or the old performance awards to boost her score, Frazier did not place among the top six candidates and therefore was not qualified to a spot on the "best qualified" list.

Even if Frazier could state a prima facie case of discrimination, the burden would simply shift to the defendant to articulate a legitimate, non-discriminatory reason for Frazier's removal from the "best qualified" list. The defendant's burden is one only of articulation; it "need not persuade the court that it was actually motivated by the proffered reason[ ]." Burdine, 450 U.S. at 254. The Secretary can easily articulate a legitimate, non-discriminatory reason for Frazier's removal from the list. When Forbes recalculated Frazier's score, she simply followed the regulations, which did not allow the ranking official to consider a performance appraisal review that was more than one year old or a performance award that was more than three years old. Because Frazier's outstanding performance review and her performance award were seven years old, Forbes had a legitimate, nondiscriminatory reason to discount Frazier's score.

Thus, the burden would shift back to Frazier to demonstrate by a preponderance of the evidence that the legitimate, non-discriminatory reason for removing Frazier from the "best qualified" list was actually a pretext for discrimination. Frazier cannot meet this burden. Other than her own speculations, Frazier failed to submit any evidence suggesting Forbes was not motivated by a desire to enforce the rules when she lowered Frazier's score and removed her from the "best qualified" list.

Accordingly, we conclude that the district court correctly granted summary judgment in favor of the defendant on the disparate treatment claim.

8

B.

We next turn to Frazier's disparate impact claim. She challenges the IRS' practice, when evaluating applications, of not considering performance appraisals that are more than one year old or performance awards that are more than three years old. Although the IRS's practice is neutral on its face, Frazier contends that it has a disparate impact on women who have been absent from the work force. She also maintains that the practice affects white women more than black women because white women tend to leave and re-enter the work force more often than black women.

To establish a prima facie case of disparate impact, Frazier must (1) identify a "specific employment practice that is challenged," and (2) show causation. Watson v. Fort Worth Bank and Trust, 487 U.S. 977, 994 (1988). To show causation, Frazier must "offer statistical evidence of a kind and degree sufficient to show that the practice in question has caused the exclusion of applicants for jobs or promotions because of their membership in a protected group." Id.

Frazier failed to offer sufficient statistical evidence to show causation. Frazier submitted a report by her expert witness, Dr. Lance W. Saberhagen, supporting her disparate impact claim. However, Dr. Saberhagen admitted during his deposition that his report showed that there was no statistical underrepresentation of white women--Frazier's protected class[4]--in the IRS. After the deposition, Frazier submitted a second report prepared by Dr. Saberhagen that provided additional statistics to support Frazier's disparate impact claim. The district court refused to consider this evidence because it was submitted after the pretrial conference.

_____

[4] Frazier argues on appeal that the operative class is not white women, but white women who seek to re-enter the work force after taking maternity leave for more than one year. Cf. Philips v. Martin Marietta Corp., 400 U.S. 542 (1971) (recognizing for the first time a "sex plus" theory of discrimination). The plaintiff's expert, however, did not offer any statistical evidence relating to white women who have re-entered the work force after taking time off to raise children. In compiling his statistics, the expert accounted for only race and gender; he did not consider any other factors.

9

Frazier contends that the district court erred in refusing to consider Dr. Saberhagen's second report. Generally, the district court enjoys broad discretion in deciding whether or not evidence is admissible, and we will not reverse its rulings absent an abuse of discretion. Distaff, Inc. v. Springfield Contracting Corp., 984 F.2d 108, 111 (4th Cir. 1993). Frazier attempted to submit Dr. Saberhagen's second report after the defendant had successfully discredited his original report. The second report was an obvious attempt to introduce additional statistics at the last minute to resurrect Frazier's disparate impact claim. Frazier submitted the second report three days before the hearing on the summary judgment motion and two weeks before trial, giving the defendant little, if any, time to study the new evidence and to depose Dr. Saberhagen before the hearing on the summary judgment motion. The district court did not abuse its discretion in refusing to consider the expert's second report. **5**

_____

**5** Frazier also argues that the district court held the parties to different standards on procedural matters. On September 1, 1994, the district court entered a Scheduling Order, which directed the parties to complete discovery by November 11, 1994, and set a pretrial conference for November 17, 1994. The order provided that a party could not use as evidence any exhibit that was not submitted at the pretrial conference. It also required the parties to file any pretrial motions before the pretrial conference. Frazier complains that the district court enforced its scheduling order only against her: the district court refused to consider Dr. Saberhagen's second report because it was filed after the pretrial conference, but it considered the defendant's motion for summary judgment even though it was filed on December 16, 1994, one month after the pretrial conference.

The district court did not act with a double standard. Dr. Saberhagen was not able to complete his first report by the close of discovery. The district court agreed to grant Dr. Saberhagen additional time to complete his report, as long as the defendant would have an opportunity to depose him. Dr. Saberhagen submitted his report on November 17, 1994, and the defendant scheduled a deposition for December 8, 1994. After the deposition revealed the weakness of Dr. Saberhagen's testimony, the defendant filed a motion for summary judgment within eight days of the deposition. Given Frazier's delay in submitting her expert's report, it was appropriate for the district court to consider the defendant's motion for summary judgment even though it was filed after the pretrial conference.

Because Frazier did not present sufficient statistical evidence demonstrating that the IRS' hiring policies have a disparate impact on white women, the district court properly granted summary judgment in favor of the defendant on Frazier's disparate impact claim.

III.

For the foregoing reasons, we affirm the district court's granting of summary judgment in favor of the defendant.

AFFIRMED

11